HOLLAND & KNIGHT LLP
BRIAN C. BUNGER (SBN 142001)
JESSICA M. BROWN (SBN 295293)
50 California Street, Suite 2800
San Francisco, CA 94111
Telephone: 415.743.6900
Fax: 415.743.6910
Email: brian.bunger@hklaw.com
jessica.brown@hklaw.com

Attorneys for Petitioner/Plaintiff,
THE TWO HUNDRED FOR HOMEOWNERSHIP

Holland & Knight LLP
50 California Street, Suite 2800
San Francisco, CA 94111
Tel: 415.743.6900
Fax: 415.743.6910

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

FRESNO DIVISION

THE TWO HUNDRED FOR HOMEOWNERSHIP, a California Nonprofit Public Benefit Corporation, ROBERT APODACA, an individual, and JOSE ANTONIO RAMIREZ, an individual,

Petitioners/Plaintiffs,

v.

CALIFORNIA AIR RESOURCES BOARD, STEVEN S. CLIFF, in his official capacity, and DOES 1-25,

Respondents/Defendants.

Case No.: 1:22-at-904

VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF; PETITION FOR WRIT OF MANDATE

Plaintiffs and Petitioners The Two Hundred for Home Ownership, Robert Apodaca, and Jose Antonio Ramirez allege as follows:

**INTRODUCTION**

1. Petitioner and Plaintiff The Two Hundred for Homeownership, a California Nonprofit Public Benefit Corporation (successor of The Two Hundred, an unincorporated association of civil rights leaders), and two of its members Robert Apodaca and Jose Antonio Ramirez, bring this action for declaratory and injunctive relief and writ of mandate pursuant to the Constitutions of the State of California and of the United States, the California Administrative

Procedures Act and the California Environmental Quality Act, to vacate the adoption by Respondent and Defendant, the California Air Resources Board ("CARB"), of the Advanced Clean Cars II regulation that effectively outlaws sales of new passenger vehicles with internal combustion engines ("ICE") and mandates sales of only new passenger electric vehicles ("EVs") beginning in 2035.

2. Affordable and reliable passenger vehicles have been, for decades, relied upon by almost all Californians to get grownups to work and get the kids to school on time, get everyone to the doctor's and dentist's office, visit and care for extended family members, and engage in routine daily actions from shopping for healthy and affordable foods from supermarkets to participating in team and solo sports and recreation activities. Car ownership and use was so critical to safe participation in California life that more than one million unauthorized immigrants have received legal Drivers' Licenses since one of California's many civil rights laws was enacted less than ten years ago (Cal. Vehicle Code § 12801.9).

3. CARB's prohibition on the sale of new ICE vehicles in 2035 results in disparate harms to poor and working families in California's inland and rural communities, including in the majority minority communities enduring long distance commutes to jobs. The Two Hundred and other parties presented CARB with undisputed evidence about the high cost (over $50,000) of such EVs, the limited daily mileage range of such vehicles and the commute distances endured daily by millions of Californians (especially among lower income or rural minority community members who cannot afford housing close to the State's major coastal job centers), the limited lifetime range of such cars as batteries wear out over a few years and battery replacement costs exceed another unaffordable cost in excess of $15,000, and the unreliability of EVs for many families given the hours of secure battery charging time required daily for households using the same car for two work shifts or living in apartments and homes without safe, secure and proximate chargers. CARB ignored virtually all of these disparate harms to the necessary daily activities in our communities, while offering up only a token and ineffective alm in the form of a promised EV rebate of less than $5,000 to families having no financial capacity to pay the remaining $45,000 for an EV - and no physical access to safe or reliable or feasible daily chargers.

Holland & Knight LLP
50 California Street, Suite 2800
San Francisco, CA 94111
Tel: 415.743.6900
Fax: 415.743.6910

Holland & Knight LLP
50 California Street, Suite 2800
San Francisco, CA 94111
Tel: 415.743.6900
Fax: 415.743.6910

4. The Two Hundred does not oppose EVs, does not oppose a fair and economically feasible reduction in greenhouse gas emissions ("GHG") from cars, and does not deny the importance of climate change. CARB is not omnipotent, however - it is a state agency charged with devising regulations that reach legislated GHG reduction targets within the boundaries of existing Constitutional and statutory law, including civil rights laws. CARB has no authority to throw civil rights, or the needs of millions of California families for reliable, affordable, and available vehicular use, under the bus. Just as California's air quality agencies could have attempted to eliminate ICE vehicles as a smog reduction regulation in the 1970's, but did not in fact do so because they lacked the legal authority to end effective mobility solutions for California's families, CARB lacked the legal authority to prohibit new ICE vehicles sales in 2035 when it adopted the Advanced Clean Cars II regulation. CARB cannot lawfully choose to invent and enforce a regulation that strands the now majority of Latinos, Blacks, Asians, and other ethnic minorities without effective access to transportation mobility.

5. Petitioners and Plaintiffs bring this action because their experience with defendant, the California Air Resources Board ("CARB"), including in the rule making process for the adoption of the Advanced Clean Cars II regulation, demonstrates that CARB's actions violate the constitutional rights guaranteed to The Two Hundred and others under the Constitutions of the State of California and the United States, exceed CARB's statutory authority, ignore required procedural and substantive requirements for rule making activities, and prove that CARB's vows to respect racial equity are insincere, and an empty bureaucratic slogan.

**JURISDICTION AND VENUE**

6. Plaintiffs' and Petitioners' claims arise, in part, under the Constitution and laws of the United States. This court has jurisdiction over these claims under 28 U.S.C. §§ 1331 and 1343(a)(3).

7. This court has the authority to grant declaratory and injunctive relief under 28 U.S.C. §§ 2201-2202 and Fed. R. Civ. P. 57 and 65. The federal rights asserted by Plaintiffs and Petitioners are enforceable under 42 U.S.C. § 1983.

8. Plaintiffs' and Petitioners' claims also arise, in part, under California law. This court has supplemental jurisdiction over these claims under 28 U.S.C. § 1367.

9. Venue is proper in the Eastern District of California under 28 U.S.C. § 1391(b). Defendant CARB maintains its principal offices in this judicial district. All of the events and acts and omissions of Defendants giving rise to this action occurred in this judicial district.

10. Pursuant to Eastern District of California Local Rule 120(d), intradistrict venue is proper in Fresno, California, because the effects of the conduct at issue will be felt in, and Plaintiff Petitioner Jose Antonio Ramirez resides in, Fresno County, California, and The Two Hundred is active statewide including but not limited to Plaintiff Petitioner Robert Apodaca who resides in Alameda and Los Angeles Counties. *See Cent. Valley Chrysler-Jeep, Inc. v. Witherspoon*, 2005 WL 2709508, at *7–8 (E.D. Cal. Oct. 20, 2005).

## PARTIES

*Plaintiffs and Petitioners*

11. Petitioner/Plaintiff The Two Hundred for Homeownership ("The Two Hundred") is a California Nonprofit Public Benefit Corporation (successor of the Two Hundred, an unincorporated association of civil rights leaders) consisting of community leaders, opinion makers and advocates working in California and elsewhere on behalf of low income minorities who are, and have been, affected by California's Housing crisis and increasing wealth gap. *See*, www.thetwohundred.org/.

12. The Two Hundred is committed to increasing the supply of housing, to reducing the cost of housing to levels that are affordable to California's hard working families, and to restoring and enhancing home ownership by minorities so that minority communities can also benefit from the family stability, enhanced educational attainment over multiple generations, and improved Family and individual health outcomes, that white homeowners have long taken for granted. The Two Hundred includes civil rights advocates who each have four or more decades of experience in protecting the civil rights of our communities against unlawful conduct by government agencies as well as businesses.

Holland & Knight LLP
50 California Street, Suite 2800
San Francisco, CA 94111
Tel: 415.743.6900
Fax: 415.743.6910

Holland & Knight LLP
50 California Street, Suite 2800
San Francisco, CA 94111
Tel: 415.743.6900
Fax: 415.743.6910

13. The Two Hundred supports the quality of the California environment, and the need to protect and improve public health in our communities.

14. The Two Hundred have for many decades watched with dismay decisions by government bureaucrats that discriminate against and disproportionately harm minority communities. The Two Hundred have battled against this discrimination for entire careers, which for some members means working to combat discrimination for more than 50 years. In litigation and political action, The Two Hundred have worked to force two government bureaucrats to reform policies and programs that included blatant racial discrimination—by for example denying minority veterans college and home loans and benefits that were available to white veterans, and promoting housing segregation as well as preferentially demolishing homes in minority communities.

15. The Two Hundred sued and lobbied and legislated to force federal and state agencies to end redlining practices that denied loans and insurance to aspiring minority home buyers and small businesses. The Two Hundred sued and lobbied to force regulators and private companies to recognize their own civil rights violations, and end discriminatory services and practices, in the banking, telecommunication, electricity, and insurance industries.

16. The Two Hundred have learned, the hard way, that California's purportedly liberal, progressive environmental regulators and environmental advocacy group lobbyists are as oblivious to the needs of minority communities, and are as supportive of ongoing racial discrimination in their policies and practices, as many of their banking, utility and insurance bureaucratic peers.

17. Several years ago, The Two Hundred waged a three year battle in Sacramento to successfully overcome state environmental agency and environmental advocacy group opposition to establishing clear rules for the cleanup of the polluted properties in communities of The Two Hundred, and experienced first-hand the harm caused to those communities by the relationships between regulators and environmentalists who financially benefited from cleanup delays and disputes instead of creating the clear, understandable, financeable, insurable, and equitable rules for the cleanup and redevelopment of the polluted properties that blighted these communities.

18. The Two Hundred's members include, but are not limited to, members of, and longtime advocates, for minority communities in California. The Two Hundred is particularly

Holland & Knight LLP
50 California Street, Suite 2800
San Francisco, CA 94111
Tel: 415.743.6900
Fax: 415.743.6910

focused on increasing homeownership among California's minority communities. Homeownership has been the Nation's most successful pathway for hard working families to enter the middle class, and creates intergenerational wealth as monthly housing payments create home equity - equity that can be drawn upon to finance college educations, manage the economic challenges of illness and old age, and help launch children and grandchildren with down payments and other assistance to continue the upward mobility trajectory of future generations. For many decades, homeownership opportunities were denied to communities of color through government actions like racially exclusionary zoning, and eligibility prohibitions for mortgage insurance and veterans' home loan programs. Civil rights laws such as the Fair Housing Act enacted in the 1960's righted these wrongs, and The Two Hundred's civil rights veterans were active advocates and litigants for enacting and enforcing these laws. California's minority homeownership rates improved until the Great Recession that began in 2008, when predatory lending and foreclosure practices unlawfully targeted minority homeowners who lost trillions of dollars of family wealth through home foreclosures. The Two Hundred was formed in the wake of the Great Recession to restore attainable minority homeownership to California's hard working families, only to discover that California's byzantine regulatory mandates had driven the cost of homeownership - and other essential living expenses like fuel, electricity and water - to top-of-nation extremes. California is now the world's fourth largest economy, through regulatory choices that also created the nation's highest poverty rate and number of poor people, a disproportionate number of whom are children - and members of our communities. Attainable homeownership will be harmed further with CARB's Advanced Clean Cars II rule, which deprives families in our communities with attainable, affordable, and reliable transportation mobility.

19. Petitioner and Plaintiff, Robert J. Apodaca, is the Vice-Chair and Policy Director of The Two Hundred for Homeownership (formerly known as The Two Hundred), with a 45-year career as a civil rights advocate and board member, and advisor on financial, housing, and transportation challenges and solutions.

20. Petitioner and Plaintiff, Jose Antonio Ramirez, is the son of an immigrant farmworker, a lifelong Central Valley resident, and served for more than two decades as the city

Holland & Knight LLP
50 California Street, Suite 2800
San Francisco, CA 94111
Tel: 415.743.6900
Fax: 415.743.6910

manager of rural communities in Fresno and Merced counties. Mr. Ramirez has been a civil rights advocate for over 25 years. In his recent campaign to serve as Supervisor in Fresno County, Mr. Ramirez prioritized increasing rural community homeownership, economic development that includes clean energy and water solutions, expanded workforce training including broadband internet service in rural communities, and public safety.

21. Petitioners and Plaintiffs, The Two Hundred, Mr. Ramirez, and Mr. Apodaca are referred to collectively throughout the remainder of this Complaint as Petitioners.

22. Petitioners have been injured by the conduct of CARB described in this Complaint in that they have been denied due process and equal protection of the laws both in the rule-making process and the effect the Advanced Clean Cars II regulation will have on the availability and affordability of necessary private transportation. Petitioner The Two Hundred has additionally been injured by CARB's actions in approving the racially discriminatory Advanced Clean Cars II regulation in that it has been forced to divert time and resources from its advocacy for affordable homeownership to defeating racist policies that affect the availability of affordable private transportation (necessary in many cases to maintain employment in order to pursue homeownership). Moreover, in the future, The Two Hundred will be forced to divert resources to counteract CARB's enactment and implementation of the Advanced Clean Cars II regulation and work to ensure continued access to affordable transportation, such that homeownership is even possible, because those affordable vehicles provide the means by which community members get to and from work to support buying home, among other things.

*Defendants and Respondents*

23. Defendant the California Air Resources Board is an agency of the State of California. On information and belief, current members of CARB are: Liane M. Randolph, Sandra Berg, John Eisenhut, John R. Balmes, Hector De La Torre, Dean Flores, Eduardo Garcia, Barbara Riordan, Phil Serna, Daniel Sperling, and Diane Takvorian, Davina Hurt, Nora Vargas, Tania Pacheco-Werner, Gideon Kracov, and Connie M. Leyva.

24. Defendant Steven S. Cliff, sued herein in his official capacity, is the Executive Officer of CARB.

Holland & Knight LLP
50 California Street, Suite 2800
San Francisco, CA 94111
Tel: 415.743.6900
Fax: 415.743.6910

25. Defendants the California Air Resources Board and Steven S. Cliff are referred to collectively throughout the remainder of this Complaint as CARB.

26. Petitioners are ignorant of the true names or capacities of the defendants sued herein under the fictitious names DOES 1 through 20 inclusive. When their true names and capacities are ascertained, Petitioners will amend this Petition/Complaint to show such true names and capacities. Petitioners are informed and believe, and thereon allege, that DOES 1 through 20, inclusive, and each of them, are agents or employees of one or more of the named Defendants responsible, in one way or another, for the promulgation and prospective enforcement of the Advanced Clean Cars II regulation sought to be invalidated and set aside herein.

**FACTUAL BACKGROUND**

27. In April 2022, CARB proposed a new regulation for vehicle emissions, referred to as the Advanced Clean Cars II regulation. According to CARB, the Advanced Clean Cars II regulation is intended to continue to limit criteria, toxic and greenhouse gas emissions from certain motor vehicles by increasing the stringency of the existing CARB low emission vehicle program and mandating increasing numbers of zero emission vehicles be sold in California, so that by model year 2035 virtually 100 percent of new vehicles sold in California would be zero emission vehicles.

28. Pursuant to California Public Resources Code section 21080.5, CARB has an approved Certified Regulatory Program under which it purports to satisfy its obligations under the California Environmental Quality Act. California Pub. Res. Code § 21000, et seq ("CEQA"). Pursuant to this program, CARB prepares a functional equivalent document to a CEQA Environmental Impact Report referred to as an Environmental Analysis ("EA").

29. In connection with development of the Advanced Clean Cars II regulation, CARB prepared an EA.

30. During the course of the Advanced Clean Cars II rule-making process, through its counsel, The Two Hundred submitted comments on the proposed rule, dated May 31, 2022, and August 13, 2022. As discussed further below, in their comments, The Two Hundred identified numerous procedural and substantive deficiencies in the proposed Advanced Clean Cars II regulation and the associated EA.

Holland & Knight LLP
50 California Street, Suite 2800
San Francisco, CA 94111
Tel: 415.743.6900
Fax: 415.743.6910

31. During the course of CARB's Advanced Clean Cars II rule-making, in August 2022, before CARB adopted the Advanced Clean Cars II regulation, The Two Hundred received a 15-day Notice of the Availability of Additional Documents purportedly supportive of the rule-making proposal, but were shocked and saddened to learn that CARB's commitment to racial equity was again thrown under the bus as some of these additional documents were available solely for in-person review at CARB's office in Sacramento if and to the extent a designated staff member agreed to accommodate an in-person request. As CARB's second 15-day Notice states, after listing TWENTY-FOUR entirely new documents as additions to the Advanced Clean Cars II rulemaking record, that:

> These documents are available for inspection at the California Air Resources Board, 1001 I Street, Sacramento, California, 95814, between the hours of 9:00am to 4:00pm, Monday through Friday (excluding holidays). To inspect these documents please contact Bradley Bechtold, Regulations Coordinator, at Bradley.Bechtold@arb.ca.gov or (279) 208-7266.

Many of these documents could instantly be posted on the CARB website, alongside other documents in the rulemaking record, and made available for actual public review by people who work at real jobs - and cannot take the time to travel to Sacramento for likely more than a work day to review the documents. This reversion to an in-person, appointment-only, weekday review is also deeply disrespectful of those at heightened risk of COVID - and the August 2022-only period also ignored the twin chaos of summer vacations and school starts that further impair extended weekday visits to the CARB office.

32. The Two Hundred described, as it had in its civil rights lawsuit against CARB's 2017 Scoping Plan (*The Two Hundred, et al., v. California Air Resources Board, et al.*, Case No. 18CECG01494 (Cal. Super. Ct. Apr. 27, 2018) (the Petition for which was included with its comments)), that access to reliable, affordable passenger vehicle ownership is a major civil rights issue. It is critical in the vast majority of the state of California (where transit/walking/biking options are nonexistent). Transit ridership has dropped pre- and post-COVID especially among lower income commuters as confirmed by UCLA's comprehensive transit utilization reports. Moreover, the necessity of driving has been recognized as a civil right - by the Legislature in

Holland & Knight LLP
50 California Street, Suite 2800
San Francisco, CA 94111
Tel: 415.743.6900
Fax: 415.743.6910

authorizing undocumented immigrants to receive Drivers' Licenses (and more than a million have done so), and by the California Supreme Court and United States Supreme Court which have both held that driving is so critical to modern living that depriving someone of a Driver's License triggers the due process protections of the state and federal Constitutions.

33. The Advanced Clean Cars II Rule violates civil rights laws, as well as the State and Federal Constitution unless it is modified to include the concurrent approval of an effective, equitable, and fully-funded program to continue to provide for private vehicle ownership in our communities. Bureaucratic mismanagement and racial blindness (or bias) in the "cash for clunkers" program in Southern California caused the initial program rollout to simply strip affordable used cars from poor working families. The Advanced Clean Cars II Rule follows precisely this racist pathway in mandating the phase-out of the source of the state's affordable used car supply.

34. As reported by United Way of California, 97% of California's poor households include at least one working adult. While there are poor people of all races, Latinos have the highest poverty rate (52%), followed by Blacks (41%) and Native Americans (39%). https://www.unitedwaysca.org/realcost Climate programs such as the Advanced Clean Cars II regulation, that impose higher economic costs on the poor, also cause racially disparate harms to communities of color.

35. CARB's own data acknowledges car commutes (single occupancy and carpools) are by far the dominant transit mode, and that notwithstanding decades of effort and billions in transit funding, transit ridership has decreased, and transit commuters spend twice as long as car commuters getting to work. https://ww2.arb.ca.gov/sites/default/files/2022-07/2022_SB_150_Main_Report_Draft_ADA.pdf And, as CARB member Dr. Sperling forcefully reminded CARB and informed the public at the CARB Board meeting on June 22-23, 2022, vehicle miles travelled ("VMT") mandates have not and will not work. Pipe dreams about fixed route public transit serving the needs of the working poor steal 20 hours per month from workers who use transit instead of driving - hours that can be spent caring for children, or on improving health and education outcomes.

Holland & Knight LLP
50 California Street, Suite 2800
San Francisco, CA 94111
Tel: 415.743.6900
Fax: 415.743.6910

36. Car ownership needs to be combined with housing for families to succeed, as demonstrated by two Housing and Urban Development demonstration programs (Moving to Opportunity for Fair Housing and Welfare to Work Vouchers). As UCLA scholars who examined the data concluded: "Housing voucher recipients with cars tended to live and remain in higher-opportunity neighborhoods—places with lower poverty rates, higher social status, stronger housing markets, and lower health risks. . . . Cars are also associated with improved neighborhood satisfaction and better employment outcomes. Among Moving to Opportunity families, those with cars were twice as likely to find a job and four times as likely to remain employed." https://www.urban.org/urban-wire/many-low-income-families-cars-may-be-key-greater-opportunity#:~:text=The%20results%3F,satisfaction%20and%20better%20employment%20outcomes.

37. Car ownership also massively expands employment opportunities even in transit served, higher density coastal regions. For example, in a San Diego study of job access via 30 minute transit versus car commutes, USC researchers found that 30 times more jobs can be accessed via car than transit. https://priceschool.usc.edu/news/how-transit-affects-job-seekers/#:~:text=Job%20access%20by%20public%20transit%20and%20by%20car&text=Researchers%20found%20that%20driving%20or,in%20a%2030%2Dminute%20commute.acc

38. Only twenty percent (20%) of adults living below the national poverty line do not have access to a car. https://www.governing.com/archive/gov-car-ownership-poverty.html. Families that own a car worth more than $4,650 lose access to key public assistance programs like CalWorks and food subsidies. *See also,* https://www.governing.com/archive/gov-car-ownership-poverty.html

39. New electric cars cost far more than conventional vehicles, and unlike conventional vehicles cannot be maintained indefinitely. Once EV batteries wear out, they must be replaced - or the car is worthless. EVs are not designed to allow battery replacements, and for the few for which battery replacement is an option, the battery replacement cost is over $15,000 - over three times the amount allowed for our poorest families to own a car without losing food and cash assistance. Today, even in a post-pandemic supply chain constrained economy, one California used car website

Holland & Knight LLP
50 California Street, Suite 2800
San Francisco, CA 94111
Tel: 415.743.6900
Fax: 415.743.6910

lists more than 1200 used cars for sale at prices at or below $5,000, https://www.carsforsale.com/cheap-cars-for-sale-in-california-P100006-L103772, and another lists almost 300 for less than $4000. https://www.cars.com/shopping/results/?stock_type=all&makes%5B%5D=&models%5B%5D=&list_price_max=4000&maximum_distance=150&zip=90220 These and similar very low cost cars are critical to the state's poor and lower income families.

40. While the absence of sufficient EV charging infrastructure in disadvantaged communities has been acknowledged by CARB, electricity supply and distribution constraints for electric chargers have been largely to entirely ignored. These challenges are even more acute in higher density communities of color, which have multiple cars and adult workers per household. A further ignored challenge is the assumption that working families have a secure location to charge a car for 6+ hours, or that households where a car is in near-constant use by multiple adults working multiple jobs and caring for multiple kids can afford to lose access to a car for almost an entire workshift.

41. The Advanced Clean Cars II rule ignores the real consequences to real people of banning the source of ongoing, reliable, cost-effective, and low emission cars that are affordable in the used car market for Californians who cannot afford a $40,000 EV. The Advanced Clean Cars II rule also ignores the fact that these consequences are both more acute and cause racially disparate harm to California's working families. Notwithstanding CARB's failed effort in The Two Hundred's pending lawsuit (*see*, Paragraph 32, supra) to argue that it was entirely Constitutional for CARB to adopt racially discriminatory climate policies (itself a shocking argument, which the court rejected), it remains illegal for CARB to adopt regulations that cause disparate harms to racial minorities. The Advanced Clean Cars II rule does just that, and must be vacated pending the previously-promised, and now ignored, "just transition" to reducing reliance on fossil fuels.

42. The Advanced Clean Cars II regulation will worsen, not improve, local air quality and global greenhouse gas (GHG) emissions. Vehicle emission standards set pursuant to the Clean Air Act have a proven track record of reducing priority air pollutants without reducing car-dependent transportation to jobs, schools, hospitals, and other critical destinations. As reported by

Holland & Knight LLP
50 California Street, Suite 2800
San Francisco, CA 94111
Tel: 415.743.6900
Fax: 415.743.6910

President Obama's EPA in 2016, tailpipe emissions of criteria pollutants were reduced by up to 99% even as vehicle miles travelled increased nationally - a massive win for air quality that did not condemn working families to increased poverty or worsen health and educational outcomes.

43. The United States Environmental Protection Agency could have, in the early stages of the Clean Air Act, simply decided to ban cars with internal combustion engines. Instead, it adopted technology-neutral emission reduction mandates that resulted in the elimination of lead in fuel, the invention and widespread success of catalytic converters, and an increasingly fuel-efficient (and thus lower greenhouse gas-emitting) 99% less polluting vehicular fleet. And that was before greenhouse gas (CO2) reductions were even prioritized.

44. Reducing greenhouse gas is intended to combat global climate change, but, as CARB has itself acknowledged, GHG inventory emissions that occur within California's borders (as measured by CARB) comprise less than 1% of global anthropogenic emissions. These emissions can cease to exist entirely ("carbon neutrality") and global climate change outcomes will remain unchanged. Even if other states adopt California's internal combustion engine ban, global climate change outcomes will remain unchanged. What will certainty occur, however, is that instead of assuring the continued improvement of the fleet, CARB will have created our own Havana, where higher emitting GHG cars are kept alive for decades to allow working families to continue to work and live, and more cost-efficient GHG technologies are stymied by CARB's top-down 2022 technology diktat.

45. Neither the federal Clean Air Act (nor California's equivalent) authorizes an agency to ban the affordable, reliable, and ever more efficient transportation mode that almost all Californians rely on, and that working families earning lower wages and living in or near poverty - the highest proportion of whom are members of communities of color - depend on. It is also a policy determination that the Legislature - representatives of the people in our democratic system - declined to enact, after hearing from scores of interested parties and members of the public. The Advanced Clean Cars II regulation's radical curtailment of transportation mobility for working families and communities of color for any reason, including climate, suffers from the same foundational Constitutional flaw identified by the Supreme Court in *West Virginia v. EPA*, 142 S.

Holland & Knight LLP
50 California Street, Suite 2800
San Francisco, CA 94111
Tel: 415.743.6900
Fax: 415.743.6910

Ct. 2587 (2022): CARB is an administrative agency charged with implementing the law, not with inventing it.

46. As recently observed by the co-founder of [Democratic-Party Aligned] New American Foundation, the nation needs to address both infrastructure and climate change needs, but not through "[p]rogressive technocracy" that is "reformist and elitists" in which "social engineers, insulated from democratic accountability and wielding vast authority, are empowered to devise long-range plans to promote social and environmental goals, which are handed over to deferential elected officials to implement with few changes - against the opposition of ignorant masses if necessary." https://thebreakthrough.org/journal/no-15-winter-2022/green-new-deal-social-engineering Lind goes on to note that "Wilsonian progressivism favored institutions like the civil service and city-manager government to insulate government decision-making from voters and elected representatives."

47. Lind's 2021 observations are aligned, across party lines, with Justice Gorsuch's 2022 concurrence in *West Virginia*, where he quotes from the progressive Wilson that "the mass of the people were 'selfish, ignorant, timid, stubborn, or foolish" and defended 'the white men of the South for 'rid[ding] themselves, by fair means or foul, of the intolerable burden of governments sustained by the votes of ignorant [African Americans]." *West Virginia*, 142 S. Ct. at 2617, n.1 (Gorsuch, J., concurring).

48. CARB's Advanced Clean Cars II rule, along with the four anti-housing measures The Two Hundred challenged in the 2017 Scoping Plan, and the far more extensive and foundational flaws we have commented on for the Draft 2022 Scoping Plan, is another "progressive" Wilsonian triumph: it makes the poor poorer, and singles out communities of color and working families for disparate and massive harms to plow past the Legislature's rejection of CARB's Advanced Clean Cars II diktat.

49. Unlike Congress, however, California's Legislature consists overwhelmingly of Democrats who share CARB's climate concerns, but are also accountable to far more economically, geographically, and racially diverse voters who did not vote to make life even more expensive and

Holland & Knight LLP
50 California Street, Suite 2800
San Francisco, CA 94111
Tel: 415.743.6900
Fax: 415.743.6910

time-consuming, or eliminate access to affordable, reliable cars in favor of an aging Havana fleet model.

**VIOLATIONS OF THE CALIFORNIA ADMINISTRATIVE PROCEDURE ACT**

50. In adopting the Advanced Clean Cars II regulation, CARB was subject to, but failed to comply with, the requirements of the California Administrative Procedure Act ("APA") substantive regulatory content criteria, which prohibits the approval of new regulations unless they satisfy six discrete criteria, as defined in full below (Gov't Code § 11349).

> (a) "Necessity" means the record of the rulemaking proceeding demonstrates by substantial evidence the need for a regulation to effectuate the purpose of the statute, court decision, or other provision of law that the regulation implements, interprets, or makes specific, taking into account the totality of the record. For purposes of this standard, evidence includes, but is not limited to, facts, studies, and expert opinion.
>
> (b) "Authority" means the provision of law which permits or obligates the agency to adopt, amend, or repeal a regulation.
>
> (c) "Clarity" means written or displayed so that the meaning of regulations will be easily understood by those persons directly affected by them.
>
> (d) "Consistency" means being in harmony with, and not in conflict with or contradictory to, existing statutes, court decisions, or other provisions of law.
>
> (e) "Reference" means the statute, court decision, or other provision of law which the agency implements, interprets, or makes specific by adopting, amending, or repealing a regulation.
>
> (f) "Nonduplication" means that a regulation does not serve the same purpose as a state or federal statute or another regulation. This standard requires that an agency proposing to amend or adopt a regulation must identify any state or federal statute or regulation which is overlapped or duplicated by the proposed regulation and justify any overlap or duplication. This standard is not intended to prohibit state agencies from printing relevant portions of enabling legislation in regulations when the duplication is necessary to satisfy the clarity

Holland & Knight LLP
50 California Street, Suite 2800
San Francisco, CA 94111
Tel: 415.743.6900
Fax: 415.743.6910

standard in paragraph (3) of subdivision (a) of Section 11349.1. This standard is intended to prevent the indiscriminate incorporation of statutory language in a regulation.

51. The Advanced Clean Cars II regulation violates the "necessity" prong of the APA because CARB has not independently verified the necessity of this regulation to comply with the Legislature's SB 32 target of 40% lower GHG emissions by 2030. The Advanced Clean Cars II regulation violates the "authority" prong because CARB has acted directly contrary to the Legislature's rejection of an internal combustion engine vehicle sale phase-out, and neither CARB nor the Governor (via Executive Order) have the independent authority to impose a policy by regulation that has been expressly rejected by the people's elected representatives in the Legislature. The Advanced Clean Cars II regulation violates the "consistency" prong because it is not at all in harmony with, and in fact in conflict with, Constitutional and statutory protections of the right to travel, the right to drive, and the right to not be deprived of an effective mobility option shown to be required to protect the health, welfare, economic security, educational attainment, and upward mobility of working families, including low income families from communities of color.

52. In adopting the Advanced Clean Cars II regulation, CARB was subject to, but failed to comply with, the requirements of the APA's Standardized Regulatory Impact Analysis ("SRIA") (Cal. Gov't Code §11346.3), which requires an assessment of the economic impact of a regulation on California <u>businesses and individuals</u>. CARB's SRIA fails to analyze the harms caused by ACC II to individuals in working families, rural areas, and communities of color, but it fails even more dramatically to assess the harms caused to the small businesses owned and operated in these communities. Independent truckers, contractors and other essential workers who must transport tools or goods in personal vehicles to do their jobs and be paid, food service owners reliant on food trucks and customers reliant on cars, delivery services, drivers for rideshare services, ministers and counsellors, medical personnel and first responders, labor organizers, entertainers and athletes - all require access to affordable, reliable, personal vehicles - as well as ample supplies of electricity, safe and secure EV charging infrastructure, and (for the many essential workers forced to travel 100 miles or more each day, and for the households where vehicular use is shared by multiple workers on consecutive shifts) much more extended ranges.

Holland & Knight LLP
50 California Street, Suite 2800
San Francisco, CA 94111
Tel: 415.743.6900
Fax: 415.743.6910

**VIOLATIONS OF THE CALIFORNIA ENVIRONMENTAL QUALITY ACT**

53. In adopting the Advanced Clean Cars II regulation, CARB was subject to, but failed to comply with, the requirements of the California Environmental Quality Act ("CEQA") (Pub. Res. Code § 21000 et seq.) which requires an assessment of ALL reasonably foreseeable direct, indirect and cumulative environmental impacts of the regulation. Based on the trajectory of vehicular tailpipe emission reductions achieved by 2016 and ongoing continued fleet-level vehicular efficiencies from petroleum, hydrogen, and EV vehicles, and the extremely perverse and racist CARB metric of assuming that people and jobs that leave California result in GHG "reductions" that address climate change instead of what actually happens (increased global GHG from higher per capita states and countries), CARB's CEQA compliance failures are staggering in scope. Construction-phase impacts of massive EV charging infrastructure installations, as well as substation and distribution equipment improvements required to bring far more power into each home, and transmission and generation expansions at an even larger scale, are obvious and clear consequences of Advanced Clean Cars II regulation implementation that are ignored.

54. In the course of the rule development process for the Advanced Clean Cars II regulation, The Two Hundred submitted as part of the record for the Advanced Clean Cars II rulemaking, its comments on the Draft 2022 Scoping Plan, which include detailed CEQA comments and incorporated information on the CEQA violations described in the 2017 Scoping Plan lawsuit.

55. CARB's commitment to Racial Equity and Social Justice (Resolution 20-33) expressly acknowledged that "institutional and structural racism continues to threaten CARB's ability to equitably fulfill its charge so that all people of color - both inside the organization, and those outside the organization for whom CARB serves and work with as constituents and stakeholder - are treated without prejudice, bias and derision." This Resolution also acknowledged that ending racial equity was "vital work" and acknowledged that CARB itself "must actively participate in changing processes, protocols, and policies within its control to ensure racial equity and social justice remains a key objective in the reduction of air pollutants and greenhouse gas emissions." The Advanced Clean Cars II regulation blinks past this Resolution. Low income communities will be stuck with Havana's aging fleet of cars while the market continues to chase

Holland & Knight LLP
50 California Street, Suite 2800
San Francisco, CA 94111
Tel: 415.743.6900
Fax: 415.743.6910

high income households with high cost EV vehicles and infrastructure. Any low income household foolish enough to accept an EV will automatically lose access to public assistance programs prohibiting ownership of cars worth more than $4,650. CARB has treated with derision and bias the "intersectional" consequences of the Advanced Clean Cars II regulation, along with the concerns of scores of already-stressed workers who have taken the time - waiting in many cases hours and hours for the opportunity to speak for just one minute - to beg CARB to respect their need for affordable, reliable, personal vehicles. CARB has already formally admitted to its ongoing racism and bias, but this rulemaking package (except for the secret set of 24 new rulemaking documents added in the second 15-day notice by CARB staff, some of which we have no practical means of accessing) shows zero regard for racial equity - or impacts.

56. The Two Hundred recognize that EVs play an important role in the transportation technology of the future. However, banning far less costly, reliable, and ubiquitous vehicles used by the vast majority of Californians exceeds CARB's legal authority, and its own moral commitment to ending racial injustice.

57. On August 25, 2022, CARB approved the Advanced Clean Cars II Regulation and the associated EA, but did not meaningfully respond to, much less address, the comments provided by The Two Hundred and others.

58. On October 15, 2022, CARB issued a Notice of Decision for the Advanced Clean Cars II regulation and the EA (State Clearing House No. 2021070402).

59. In doing so, CARB again affirmed its now-wanton and flagrant pattern of violating CEQA—a pattern consistent with what an appellate court termed "ARB's lack of good faith" in correcting earlier CEQA violations as ordered by the courts.

60. California's commitment to climate leadership does not require or allow CARB to violate the civil rights of California's minority communities, or constitutional and statutory mandates for clean air, fair housing, historic preservation, consumer protection, transportation mobility, CEQA, or administrative rulemaking.

## CLAIMS FOR RELIEF

### FIRST CLAIM

Holland & Knight LLP
50 California Street, Suite 2800
San Francisco, CA 94111
Tel: 415.743.6900
Fax: 415.743.6910

**(Denial of Due Process, U.S. Const. Amd. 14, § 1)**

61. Petitioners incorporate by reference the allegations in paragraphs 1 through 60, above, as though fully set forth here.

62. Petitioners have a right to be free of arbitrary State regulations that are imposed without having first been presented to the public through duly-authorized rulemaking processes by Legislatively-authorized State agencies.

63. CARB's Advanced Clean Cars II regulation will inevitably cause serious harm to the ability of Petitioners and other members of disadvantaged minority communities to gain access to necessary, affordable and reliable transportation and will accordingly have a disproportionate adverse impact on them.

64. CARB's Advanced Clean Cars II regulation is not rationally calculated to further the State's legitimate interest in reducing emissions of GHG and other pollutants caused by motor vehicles, on their face or as applied. Instead, CARB's Advanced Clean Cars II regulation is both arbitrary and counterproductive in terms of actually achieving their purported goals of reducing emissions caused by motor vehicles.

65. For these reasons, CARB's Advanced Clean Cars II regulation has been issued in violation of, and constitutes a substantive violation of, the Due Process Clause of the United States Constitution. (U.S. Const. Amd. 14, § 1)

**SECOND CLAIM**

**(Denial of Due Process, Cal. Const. Art. I)**

66. Petitioners incorporate by reference the allegations in paragraphs 1 through 65, above, as though fully set forth here.

67. Petitioners have a right to be free of arbitrary State regulations that are imposed without having first been presented to the public through duly-authorized rulemaking processes by Legislatively-authorized State agencies.

68. CARB's Advanced Clean Cars II regulation will inevitably cause serious harm to the ability of Petitioners and other members of disadvantaged minority communities to gain access to

Holland & Knight LLP
50 California Street, Suite 2800
San Francisco, CA 94111
Tel: 415.743.6900
Fax: 415.743.6910

necessary, affordable and reliable transportation and will accordingly have a disproportionate adverse impact on them.

69. CARB's Advanced Clean Cars II regulation is not rationally calculated to further the State's legitimate interest in reducing emissions of GHG and other pollutants caused by motor vehicles, on their face or as applied. Instead, CARB's Advanced Clean Cars II regulation is both arbitrary and counterproductive in terms of actually achieving their purported goals of reducing emissions caused by motor vehicles.

70. For these reasons, CARB's Advanced Clean Cars II regulation has been issued in violation of, and constitutes a substantive violation of, the Due Process Clause of the California Constitution. (Cal. Const. Art. 1, § 7)

**THIRD CLAIM**

**(Denial of Equal Protection, U.S. Const. Amd. 14, § 1)**

71. Petitioners incorporate by reference the allegations in paragraphs 1 through 70, above, as though fully set forth here.

72. The right to travel and non-discriminatory access to transportation, including private transportation, is a fundamental interest for purposes of evaluating regulations under the equal protection clause of the United States Constitution. U.S. Const. Amd. 14, § 1.

73. CARB's GHG Advanced Clean Cars II regulation disproportionately affects members of minority communities, including Petitioners Robert Apodaca, and Jose Antonio Ramirez by making affordable private transportation unavailable to them, as compared with non-minority persons unaffected by the Advanced Clean Cars II regulation, while imposing arbitrary, counter-productive State regulations and standards.

74. Race and ethnicity are suspect classes for purposes of evaluating regulations under

75. the equal protection clause of the United States Constitution. U.S. Const. Amd. 14, § 1.

76. CARB's Advanced Clean Cars II regulation violates the equal protection clause of the United States Constitution because it makes access to new, affordable private transportation a function of race.

Holland & Knight LLP
50 California Street, Suite 2800
San Francisco, CA 94111
Tel: 415.743.6900
Fax: 415.743.6910

**FOURTH CLAIM**

**(Denial of Equal Protection, Cal. Const. Art. I, § 7)**

77. Petitioners incorporate by reference the allegations in paragraphs 1 through 76, above, as though fully set forth here.

78. The right to travel and non-discriminatory access to transportation, including private transportation, is a fundamental interest for purposes of evaluating regulations under the equal protection provisions of the California Constitution. Art. I, § 7 and Art. IV, § 16.

79. CARB's GHG Advanced Clean Cars II regulation disproportionately affects members of minority communities, including Petitioners Robert Apodaca, and Jose Antonio Ramirez by making affordable private transportation unavailable to them, as compared with non-minority persons unaffected by the Advanced Clean Cars II regulation, while imposing arbitrary, counter-productive State regulations and standards.

80. Race and ethnicity are suspect classes for purposes of evaluating regulations under the equal protection provisions of the California Constitution. Art. I, § 7 and Art. IV, § 16.

81. CARB's Advanced Clean Cars II regulation violates the equal protection provisions of the California Constitution because it makes access to new, affordable private transportation a function of race.

**FIFTH CLAIM**

**(Violations of California Administrative Procedure Act, Cal. Gov. Code § 11346 *et seq.*)**

82. Petitioners incorporate by reference the allegations in paragraphs 1 through 81, above, as though fully set forth here.

83. The Advanced Clean Cars II regulation violates the "necessity" prong of the APA because CARB has not independently verified the necessity of this regulation to comply with the Legislature's SB 32 target of 40% lower GHG emissions by 2030. The Advanced Clean Cars II regulation violates the "authority" prong because CARB has acted directly contrary to the Legislature's rejection of an internal combustion engine vehicle sale phase-out, and neither CARB nor the Governor (via Executive Order) have the independent authority to impose a policy by regulation that has been expressly rejected by the people's elected representatives in the Legislature.

Holland & Knight LLP
50 California Street, Suite 2800
San Francisco, CA 94111
Tel: 415.743.6900
Fax: 415.743.6910

The Advanced Clean Cars II regulation violates the "consistency" prong because it is not at all in harmony with, and in fact in conflict with, Constitutional and statutory protections of the right to travel, the right to drive, and the right to not be deprived of an effective mobility option shown to be required to protect the health, welfare, economic security, educational attainment, and upward mobility of working families, including low income families from communities of color.

84. Under the APA and other applicable law, CARB is required to comply with regulations issued by the Department of Finance ("DOF") before issuing a "major regulation. Specifically, the APA (Gov. Code § 11346.3(c)) requires that CARB prepare a standardized regulatory impact assessment ("SRIA") in a form, and with content, that meets requirements set forth by the DOF in its separate regulations (1 Cal. Code Regs. § 2000 *et seq.*).

85. CARB's Advanced Clean Cars II regulation constitutes a major regulation subject to the APA's requirement that such regulations be promulgated in compliance with DOF regulations.

86. Section 2003 of DOF regulations (1 Cal. Code Regs. § 2003(a)) ("Methodology for Making Estimates") provides that, "[i]n conducting the SRIA required by Section 11346.3", CARB "shall use an economic impact method and approach that has all of the following capabilities:

> (1) Can estimate the total economic effects of changes due to regulatory policies over a multiyear time period.
>
> (2) Can generate California economic variable estimates such as personal income, employment by economic sector, exports and imports, and gross state product, based on industry relationships that are equivalent in structure to the Regional Industry Modeling System published by the Bureau of Economic Analysis.
>
> (3) Can produce (to the extent possible) quantitative estimates of economic variables that address or facilitate the quantitative or qualitative estimation of the following:
>
> > (A) The creation or elimination of jobs within the state;
> >
> > (B) The creation of new businesses or the elimination of existing businesses within the state;
> >
> > (C) The competitive advantages or disadvantages for businesses currently doing business within the state;

Holland & Knight LLP
50 California Street, Suite 2800
San Francisco, CA 94111
Tel: 415.743.6900
Fax: 415.743.6910

(D) The increase or decrease of investment in the state;

(E) The incentives for innovation in products, materials, or processes; and

(F) The benefits of the regulations, including but not limited to benefits to the health, safety, and welfare of California residents, worker safety, and the state's environment and quality of life, among any other benefits identified by the agency."

87. DOF regulations require that DOF's "most current publicly available economic and demographic projections, which may be found on the department's website, shall be used unless the department approves the agency's written request to use a different projection for a specific proposed major regulation." 1 C.C.R. § 2003(b).

88. DOF regulations also provide that: "An analysis of estimated changes in behavior by businesses and/or individuals in response to the proposed major regulation shall be conducted and, if feasible, an estimate made of the extent to which costs or benefits are retained within the business and/or by individuals or passed on to others, including customers, employees, suppliers and owners." 1 C.C.R. § 2003(f).

89. Consistent with the California Legislative Analyst Office's repeated findings that the CARB analysis methodology fails to provide sufficiently detailed information about impacts to individuals, households and businesses, CARB's adoption of the Advanced Clean Cars II regulation completely ignores the fact that California has the greatest inequality in the United States, and that energy costs, loss of energy-intensive jobs and housing costs related to CARB's policies play a major role in that unwanted outcome. To fulfill its statutory mandates, CARB must start by recognizing that, as meticulously documented in a United Way Study, more than 30% of all California households lack sufficient means to meet the real cost of living in the state, which will only be exacerbated by placing transportation out of reach of California's minority communities.

90. Multiple violations of the APA occurred during adoption of the Advanced Clean Cars II regulation and it should thus be set aside as unlawful and void.

Holland & Knight LLP
50 California Street, Suite 2800
San Francisco, CA 94111
Tel: 415.743.6900
Fax: 415.743.6910

**SIXTH CLAIM**

**(Violations of CEQA, Pub. Res. Code § 21000 *et seq.* and CEQA Guidelines, 14 C.C.R. § 15000 *et seq.*)**

91. Petitioners incorporate by reference the allegations in paragraphs 1 through 90, above, as though fully set forth here.

92. CARB violated CEQA by approving the Advanced Clean Cars II regulation in violation of the Act's requirements and by certifying a legally deficient environmental analysis.

93. CARB did not write its Final EA in plain language so that members of the public could readily understand the document.

94. CARB did not assess the "whole of the project" as required by CEQA. The "project" for CEQA purposes should have included potential direct and indirect impacts on the environment from mandating a shift to 100% EVs. Among other things, CARB's Final EA failed to address construction-phase impacts of necessary massive EV charging infrastructure installations, as well as substation and distribution equipment improvements required to bring far more power into each home, and transmission and generation expansions at an even larger scale necessitated by mandating only EVs in the vehicle fleet.

95. CARB did not base its Final EA on an accurate, stable, and finite project description. By failing to address construction-phase impacts of necessary massive EV charging infrastructure installations, as well as substation and distribution equipment improvements required to bring far more power into each home, and transmission and generation expansions at an even larger scale necessitated by mandating only EVs in the vehicle fleet, CARB applied an unreasonable and unlawful "project" definition and undermined CEQA's informational and decision-making purposes. The project description was misleading, incomplete, and impermissibly vague.

96. CARB did not properly identify the Project objectives in its EA.

97. CARB also failed to adequately evaluate the direct, indirect, and cumulative environmental impacts of the adoption of the Advanced Clean Cars II regulation in its Final EA even after multiple commenters identified numerous review gaps in their comments on the Draft EA.

Holland & Knight LLP
50 California Street, Suite 2800
San Francisco, CA 94111
Tel: 415.743.6900
Fax: 415.743.6910

98. As a result of these defects in the Final EA, CARB prejudicially abused its discretion by certifying an EIR that does not comply with CEQA and by failing to proceed in the manner required by law.

99. Petitioners objected to CARB's approval of the Advanced Clean Cars II regulation prior to the close of the final public hearings on CARB's Advanced Clean Cars II regulation and raised each of the legal deficiencies asserted in this Petition.

100. Petitioners have performed all conditions precedent to the filing of this Petition, including complying with the requirements of Pub. Res. Code section 21167.5 by serving notice of the commencement of this action prior to filing it with this Court.

## PRAYER FOR RELIEF

WHEREFORE, Petitioners, pray for the following relief:

101. For a declaratory judgment that CARB's adoption of the Advanced Clean Cars II regulation violated the due process and equal protection rights of Petitioners guaranteed by the California Constitution;

102. For a declaratory judgment that CARB's adoption of the Advanced Clean Cars II regulation violated the due process and equal protection rights of Petitioners guaranteed by the United States Constitution;

103. For a declaration, pursuant to Code of Civil Procedure § 1060, that the Advanced Clean Cars II regulation is unlawful, void, and of no force or effect;

104. For a writ of mandate or peremptory writ issued under the seal of this Court pursuant to California Code of Civil Procedure § 1094.5 or in the alternative § 1085, directing Respondents to set aside the Advanced Clean Cars II regulation;

105. For an injunction prohibiting CARB from implementing the Advanced Clean Cars II regulation;

106. For an award of their fees and costs, including reasonably attorneys' fees and expert costs, as authorized by Code of Civil Procedure § 1021.5, and 42 U.S. Code section 1988.

107. That this Court retain continuing jurisdiction over this matter until such time as the Court has determined that CARB has fully and properly complied with its Orders.

108. For such other and further relief as may be just and appropriate.

Dated: November 14, 2022

HOLLAND & KNIGHT LLP

By:______________________
Brian C. Bunger
Jessica M. Brown

Attorneys for Petitioners/Plaintiffs,

THE TWO HUNDRED, ROBERT APODACA and JOSE ANTONIO RAMIREZ

Holland & Knight LLP
50 California Street, Suite 2800
San Francisco, CA 94111
Tel: 415.743.6900
Fax: 415.743.6910

Holland & Knight LLP
50 California Street, Suite 2800
San Francisco, CA 94111
Tel: 415.743.6900
Fax: 415.743.6910

**VERIFICATION**

I, Jessica M. Brown, am one of the attorneys for THE TWO HUNDRED, a California Nonprofit Public Benefit Corporation, Plaintiffs/Petitioners in this action. I am authorized to make this verification on behalf of THE TWO HUNDRED and its members named herein. I have read the foregoing COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF and know the contents thereof. I am informed and believe and on that ground allege that the matters stated therein are true. I verify the foregoing Petition and Complaint for the reason that Plaintiffs/Petitioners named in the Complaint are not present in the county where my office is located. I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed this 14th day of November, 2022, at San Francisco, California.

JESSICA M. BROWN

Holland & Knight LLP
50 California Street, Suite 2800
San Francisco, CA 94111
Tel: 415.743.6900
Fax: 415.743.6910

**PROOF OF SERVICE**

I, the undersigned, hereby declare that I am over the age of 18 years and not a party to the above-captioned action; that my business address is 50 California Street, Suite 2800, San Francisco, California, 94111. On November 14, 2022, the following document(s) were served:

- **VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

on the interested parties in this action addressed as follows:

| | |
|---|---|
| Hon. Steven S. Cliff, Ph. D.<br>Executive Officer<br>CALIFORNIA AIR RESOURCES BOARD<br>1001 I Street<br>Sacramento, CA 95814 | Respondents/Defendants |

***By United States First-Class Mail:*** I caused a true copy of each document(s) to be placed in a sealed envelope with first-class postage affixed and placed the envelope for collection. Mail is collected daily at my office and placed in a United States Postal Service collection box for pickup and delivery that same day.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on November 14, 2022, at San Francisco, California.

Philip Dobbs