ROB BONTA, State Bar No. 202668
Attorney General of California
GARY E. TAVETIAN, State Bar No. 117135
TRACY L. WINSOR, State Bar No. 186164
Supervising Deputy Attorneys General
JANELLE M. SMITH, State Bar No. 231801
JOHN S. SASAKI, State Bar No. 202161
DAVID M. MEEKER, State Bar No. 273814
EMILY M. HAJARIZADEH, State Bar No. 325246
Deputy Attorneys General
  1300 I Street, Suite 125
  P.O. Box 944255
  Sacramento, CA 94244-2550
  Telephone: (916) 210-7795
  Fax:      (916) 327-2319
  E-mail: Emily.Hajarizadeh@doj.ca.gov
*Attorneys for Respondents*
*California Air Resources Board*
*and Steven S. Cliff, Executive Officer*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **THE TWO HUNDRED FOR HOMEOWNERSHIP, a California Nonprofit Public Benefit Corporation, ROBERT APODACA, an individual, and JOSE ANTONIO RAMIREZ, an individual,**<br><br>Petitioners and Plaintiffs,<br><br>v.<br><br>**CALIFORNIA AIR RESOURCES BOARD, STEVEN S. CLIFF, in his official capacity, and DOES 1-25,**<br><br>Respondents and Defendants. | 1:22-cv-01474-ADA-BAM<br><br>**MEMORANDUM IN SUPPORT OF RESPONDENTS' MOTION TO DISMISS PETITIONERS' VERIFIED COMPLAINT AND PETITION**<br><br>Date:         April 24, 2023<br>Time:         1:30<br>Dept:         Courtroom 1<br>Judge:        Hon. Ana de Alba<br>Trial Date:   Not Set<br>Action Filed: November 14, 2022 |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................... 1

LEGAL BACKGROUND ............................................................................................... 1

    I.     California's Vehicle Emission Laws.......................................................... 1

    II.    The ACC II Regulations............................................................................ 3

LEGAL STANDARD....................................................................................................... 4

ARGUMENT ................................................................................................................... 5

    I.     Petitioners Fail to Establish Article III Standing ..................................... 5

    II.    Petitioners Fail to State a Claim for Violations of Equal Protection of Law and Due Process ................................................................................... 8

         A.     Petitioners' Equal Protection Claims are Defective Because Petitioners Fail to Show that the ACC II Regulations are not Rationally Related to a Legitimate State Government Interest................. 9

                1.     The ACC II Regulations do not jeopardize the exercise of a fundamental right. ..................................................................... 9

                2.     Petitioners fail to present sufficient allegations to show that the ACC II Regulations are not rationally related to the State's legitimate interest in reducing greenhouse gas emissions and pollution from motor vehicles. ............................. 12

         B.     Petitioners Fail to State a Claim for Violation of the Fundamental Right to Travel or the Right to be Free from Arbitrary Government Regulations............................................................................................ 14

                1.     Petitioners fail to identify a cognizable liberty or property interest protected by either the Federal or California Constitution. ..................................................................... 15

                2.     Petitioners fail to sufficiently allege facts to claim that CARB's adoption of the ACC II regulations resulted in a deprivation of any liberty or property interest without due process........................................................................................ 16

                3.     Petitioners fail to allege facts to show that the ACC II regulations are unreasonable, arbitrary, or contrary to law.......... 17

         C.     The Court Should Decline to Exercise Supplemental Jurisdiction Over the Remaining State-Law Claims in the Petition. ........................... 18

    III.   Sovereign Immunity Bars All of Petitioners' Claims Against CARB, As Well As Their State-Law Claims Against CARB's Executive Officer ............... 19

         A.     The Eleventh Amendment Bars Petitioners' Federal Claims Against CARB.................................................................................................... 19

         B.     The Eleventh Amendment Bars Petitioners' State-Law Claims in this Court Against CARB and its Executive Officer. ............................... 19

CONCLUSION ................................................................................................................ 20

i

1

# TABLE OF AUTHORITIES

2

**Page**

3

CASES

4

*Angelotti Chiropractic, Inc. v. Baker*
    791 F.3d 1075 (9th Cir. 2015) ................................................................. 13

5

*Ashcroft v. Iqbal*
    556 U.S. 662 (2009) ..................................................................... 4, 14

6

7

*Bayer v. Neiman Marcus Grp., Inc.*
    861 F.3d 853 (9th Cir. 2017) ................................................................. 20

8

9

*Bell Atlantic Corp. v. Twombly*
    550 U.S. 544 (2007) ........................................................................... 4

10

*Black Fac. Ass'n of Mesa Coll. v. San Diego Cmty. Coll. Dist.*
    664 F.2d 1153 (9th Cir. 1981) ................................................................. 7

11

12

*Bras v. California Pub. Util. Comm'n*
    59 F.3d 869 (9th Cir. 1995) ................................................................... 7

13

*Brown v. Lucky Stores, Inc.*
    246 F.3d 1182 (9th Cir. 2001) ................................................................ 18

14

15

*Brown v. Merlo*
    8 Cal. 3d 855 (1973) ........................................................................ 13

16

*California v. Texas*
    141 S. Ct. 2104 (2021) ........................................................................ 5

17

18

*Carrico v. City & Cnty. of San Francisco*
    656 F.3d 1002 (9th Cir. 2011) ................................................................. 6

19

20

*Chapman v. Pier 1 Imports (U.S.) Inc.*
    631 F.3d 939 (9th Cir. 2011) .................................................................. 4

21

*City of Cleburne, Tex. v. Cleburne Living Center*
    473 U.S. 432 (1985) ................................................................ 11, 12, 13

22

23

*City of Sausalito v. O'Neill*
    386 F.3d 1186 (9th Cir. 2004) ................................................................. 6

24

25

*Clapper v. Amnesty Int'l USA*
    568 U.S. 398 (2013) ........................................................................... 7

26

*Cleveland Bd. of Educ. v. Loudermill*
    470 U.S. 532 (1985) .......................................................................... 14

27

28

## <u>TABLE OF AUTHORITIES</u>
### (continued)

Page

*Daimler Chrysler Corp. v. Cuno*
  547 U.S. 332 (2006) .......................................................................................... 5

*Daniel v. Nat'l Park Serv.*
  891 F.3d 762 (9th Cir. 2018) ............................................................................ 7

*Davis v. Federal Election Comm'n*
  554 U.S. 724 (2008) .......................................................................................... 6

*De La Cruz v. Tormey*
  582 F.2d 45 (9th Cir. 1978) .............................................................................. 4

*Dittman v. California*
  191 F.3d 1020 (9th Cir. 1999) .......................................................................... 19

*Doe v. Regents of the University of California*
  891 F.3d 1147 (9th Cir. 2018) .......................................................................... 20

*F.C.C. v. Beach Communications*
  508 U.S. 307 (1993) .................................................................................. 13, 14

*Fleck & Assocs., Inc. v. City of Phoenix*
  471 F.3d 1100 (9th Cir. 2006) .......................................................................... 7

*Gilmore v. Gonzales*
  435 F.3d 1125 (9th Cir. 2006) .......................................................................... 10

*Green v. Mansour*
  474 U.S. 64 (1985) ............................................................................................ 20

*Greenlaw v. Cnty. of Santa Clara*
  125 F. App'x 809 (9th Cir. 2005) ..................................................................... 19

*Guatay Christian Fellowship v. Cty. of San Diego*
  670 F.3d 957 (9th Cir. 2011) ............................................................................ 14

*Jackson v. Carey*
  353 F.3d 750 (9th Cir. 2003) ............................................................................ 5

*Krainski v. State ex rel. Bd. of Regents*
  616 F.3d 963 (9th Cir. 2010) ............................................................................ 19

*La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*
  624 F.3d 1083 (9th Cir. 2010) .......................................................................... 8

1

**TABLE OF AUTHORITIES**
(continued)

2

Page

3

*Lee v. City of Los Angeles*

4
250 F.3d 668 (9th Cir. 2001)..................................................................................... 12

5
*Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*
416 F.3d 940 (9th Cir. 2005)..................................................................................... 18

6

*Lujan v. Defs. of Wildlife*

7
504 U.S. 555 (1992) ................................................................................................... 8

8
*Mathews v. Eldridge*
424 U.S. 319 (1976) ................................................................................................. 16

9

10
*Miller v. Reed*
176 F.3d 1202 (9th Cir. 1999)......................................................................... 9, 10, 15

11
*Monarch Travel Servs., Inc. v. Associated Cultural Clubs, Inc.*

12
466 F.2d 552 (9th Cir. 1972).................................................................................... 10

13
*Navarro v. Block*
250 F.3d 729 (9th Cir. 2001)...................................................................................... 4

14

15
*Nebbia v. People of New York*
291 U.S. 502 (1934) ............................................................................................ 17, 18

16
*Nevada v. Matlean*

17
No. 3:08-CV-505-BES-VPC, 2009 WL 1810759 (D. Nev. June 24, 2009).......... 10

18
*Outdoor Media Group, Inc. v. City of Beaumont*
506 F.3d 895 (9th Cir. 2007)...................................................................................... 4

19

20
*Papasan v. Allain*
478 U.S. 265 (1986) ................................................................................................. 19

21
*Pennhurst State School & Hosp. v. Halderman*

22
(1984) 465 U.S. 89 ................................................................................................... 19

23
*People v. Moran*
1 Cal. 5th 398 (2016) ........................................................................................... 9, 15

24

25
*People v. Parker*
141 Cal. App. 4th 1297 (2d Dist. 2006).................................................................. 15

26
*Raygor v. Regents of the University of Minnesota*

27
534 U.S. 533 (2002) ................................................................................................. 19

28

iv

## <u>TABLE OF AUTHORITIES</u>
### (continued)

**<u>Page</u>**

*Religious Tech. Ctr. v. Wollersheim*
  971 F.2d 364 (9th Cir. 1992)...............................................................................18

*Rental Hous. Owners Assn. of S. Alameda Cnty., Inc. v. City of Hayward*
  200 Cal. App. 4th 81 (2011).................................................................................18

*Russell v. Carleson*
  36 Cal. App. 3d 334 (3d Dist. 1973)....................................................................14

*S.B. by & through Kristina B. v. California Dep't of Educ.*
  327 F. Supp. 3d 1218 (E.D. Cal. 2018)................................................................20

*Saenz v. Roe*
  526 U.S. 489 (1999)................................................................................................9

*Safe Air for Everyone v. Meyer*
  373 F.3d 1035 (9th Cir. 2004)................................................................................4

*Sanchez v. City of Fresno*
  914 F. Supp. 2d 1079 (E.D. Cal. 2012)..........................................................*passim*

*Savage v. Glendale Union High Sch.*
  343 F.3d 1036 (9th Cir. 2003)................................................................................4

*Shanks v. Dressel*
  540 F.3d 1082 (9th Cir. 2008)........................................................................14, 15

*Shapiro v. Thompson*
  394 U.S. 618 (1969)..............................................................................................10

*Shaw v. State of Cal. Dept. of Alcoholic Beverage Control*
  788 F.2d 600 (9th Cir. 1986)................................................................................19

*Slidewaters LLC v. Washington State Dep't of Lab. & Indus.*
  4 F.4th 747 (9th Cir. 2021)...................................................................................18

*Spokeo, Inc. v. Robins*
  578 U.S. 330 (2016)................................................................................................6

*Stock W., Inc. v. Confederated Tribes*
  873 F.2d 1221 (9th Cir. 1989)................................................................................4

*Tobe v. City of Santa Ana*
  9 Cal. 4th 1069 (1995)...........................................................................................9

# TABLE OF AUTHORITIES
## (continued)

Page

*Village of Arlington Heights v. Metropolitan Housing Development Corp.*
    429 U.S. 252 (1977) .................................................................................... 12

*Walden v. Nevada*
    945 F.3d 1088 (9th Cir. 2019) ................................................................... 19

*Watison v. Carter*
    668 F.3d 1108 (9th Cir. 2012) ..................................................................... 5

*White v. Lee*
    227 F.3d 1214 (9th Cir. 2000) ..................................................................... 4

*Wilson v. Craver*
    994 F.3d 1085 (9th Cir. 2021) ..................................................................... 5

STATUTES

28 United States Code
    § 1367(c)(1) ............................................................................................... 18
    § 1367(c)(3) ............................................................................................... 18

42 United States Code
    § 1983 ................................................................................................ 14, 19
    § 7401 et seq. ............................................................................................... 2

California Health and Safety Code
    § 38501(a) ................................................................................................... 2
    § 38550 ........................................................................................................ 2
    § 38562 ........................................................................................................ 3
    § 38562.2(c)(1) & (2) ................................................................................. 2
    § 38566 ........................................................................................................ 2
    § 39602.5(a) ................................................................................................ 3
    § 43000(b) ................................................................................................... 1
    § 43013(a) ................................................................................................... 3
    § 43801 ........................................................................................................ 2
    § 44274.4 (West 2022) ............................................................................... 4

California Civil Procedure Code
    § 1094.5 ............................................................................................... 19, 20

CONSTITUTIONAL PROVISIONS

United States Constitution
    Eleventh Amendment ........................................................................... 19, 20
    Fourteenth Amendment ............................................................ 8, 10, 13, 14

## TABLE OF AUTHORITIES
### (continued)

Page

California Constitution, Article I
  § 7.................................................................................................................... 8, 9
  § 7(a) ................................................................................................................... 14

California Constitution............................................................................. 10, 13, 14, 15

## COURT RULES

Federal Rules of Civil Procedure
  Rule 8 ..................................................................................................................... 4
  12(b)(1) ................................................................................................................... 4
  12(b)(6) ................................................................................................................ 4, 8

## OTHER AUTHORITIES

Assembly Bill No. 32 (2005-2006 Reg. Sess.) ..................................................... 2

Assembly Bill No. 1279 (2021-2022 Reg. Sess.) ................................................. 2

California Code of Regulations, Title 13
  § 1961.4................................................................................................................ 11
  § 1962.4................................................................................................................ 11

Senate Bill No. 32 (2015-2016 Reg. Sess.)......................................................... 2

1                                    **INTRODUCTION**

2          Petitioners The Two Hundred for Homeownership, Robert J. Apodaca, and Antonio

3    Ramirez (collectively, Petitioners) ask this Court to set aside and enjoin implementation of the

4    California Air Resources Board's (CARB) Advanced Clean Cars II (ACC II) regulations.  The

5    Court should dismiss the Verified Complaint and Petition (Petition) for at least two alternative

6    reasons.  First, Petitioners fail to establish Article III standing because their allegations of harm

7    are conclusory and speculative.  Second, Petitioners fail to allege facts sufficient to state a claim

8    for any violation of their due process and equal protection rights.  Petitioners fail to state a claim

9    that the ACC II regulations violate a fundamental right, and they cannot allege procedural due

10   process violations because the ACC II regulations were adopted in a public rulemaking process

11   under California's Administrative Procedure Act (California APA)—a process that Petitioners

12   themselves participated in.  Because Petitioners' federal claims fail, the Court should also decline

13   to exercise supplemental jurisdiction and dismiss Petitioners' state-law procedural challenges to

14   the ACC II regulations under the California Environmental Quality Act (CEQA) and the

15   California APA.  Accordingly, the Court should dismiss the entire Petition without leave to

16   amend.

17         If the Court does not dismiss the entire Petition, sovereign immunity bars all of Petitioners'

18   claims against CARB, as well as their state-law claims against CARB's Executive Officer.  Thus,

19   at a minimum, the Court should dismiss CARB from the action, as well as the state-law claims

20   against its Executive Officer.

21                                 **LEGAL BACKGROUND**

22   **I.     CALIFORNIA'S VEHICLE EMISSION LAWS**

23         The State of California faces a critical and urgent need to reduce emissions from motor

24   vehicles.  California's Legislature has determined that controlling and eliminating emissions of

25   air pollutants from motor vehicles is of "prime importance," including with regard to "the

26   protection and preservation of the public health and well-being, and for the prevention of

27   irritation to the senses, interference with visibility, and damage to vegetation and property."  Cal.

28   Health & Safety Code § 43000(b).  Motor vehicles, including passenger cars and light trucks

                                              1

1    subject to the ACC II regulations, produce significant amounts of noxious air pollution, including

2    fine particulate matter (sometimes called PM$_{2.5}$) and oxides of nitrogen (abbreviated as NOx),

3    both of which are harmful to human health. *See, e.g.,* Cal. Health & Safety Code § 43801

4    (declaring, "emissions of air pollutants from motor vehicles is a major contributor to air

5    pollution"). California substantially reduced emissions of these pollutants from vehicles and

6    other sources over the last several decades, but more reductions are needed, including in the many

7    parts of the state that have not yet reached the National Ambient Air Quality Standards

8    (NAAQS), as required under the federal Clean Air Act (42 U.S.C. § 7401 et seq.), including for

9    fine particulate matter and ozone.

10        In addition to causing direct threats to public health, motor vehicle pollution is a significant

11    source of the greenhouse gases that are causing the climate to change. In 2006, with its passage

12    of Assembly Bill No. 32 (2005-2006 Reg. Sess.) (AB 32), the Legislature declared that "[g]lobal

13    warming poses a serious threat to the economic well-being, public health, natural resources, and

14    the environment of California" and that its potential adverse impacts include "the exacerbation of

15    air quality problems, a reduction in the quality and supply of water to the state from the Sierra

16    snowpack, a rise in sea levels resulting in the displacement of thousands of coastal businesses and

17    residences, damage to marine ecosystems and the natural environment, and an increase in the

18    incidences of infectious diseases, asthma, and other human health-related problems." Cal. Health

19    & Safety Code § 38501(a). To address the growing threat of climate change, AB 32 required a

20    reduction in statewide greenhouse gas emissions, by the year 2020, to the level that existed in

21    1990. Cal. Health & Safety Code § 38550. In 2016, the Legislature passed Senate Bill No. 32

22    (2015-2016 Reg. Sess.), which required a further reduction in greenhouse gas emissions by

23    December 31, 2030, to at least 40 percent below the 1990 level. Cal. Health & Safety Code

24    § 38566. And in 2022, the Legislature enacted Assembly Bill No. 1279 (2021-2022 Reg. Sess.),

25    which made it state policy to reduce *net* greenhouse gas emissions to *zero* by 2045 and "[e]nsure

26    that by 2045, statewide anthropogenic greenhouse gas emissions are reduced to at least 85 percent

27    below" the 1990 level. Cal. Health & Safety Code § 38562.2(c)(1) & (2).

28

Multiple legislative directives grant CARB broad authority to reduce pollution from motor vehicles as necessary to meet the State's air quality goals and statutory obligations, including pollutants subject to the NAAQS (commonly referred to as "criteria pollutants"), and greenhouse gases.  For example, the Legislature directed CARB to adopt and implement motor vehicle emission standards (that must be met when the vehicle is new); in-use performance standards (that must be met over the course of a vehicle's useful life); and motor vehicle fuel specifications for the control of air contaminants and sources of air pollution that CARB found to be necessary, cost effective, and technologically feasible.  Cal. Health & Safety Code § 43013(a).  Regarding criteria pollutants such as particulate matter and ozone, the Legislature directed CARB to adopt rules and regulations that will allow all areas of the state to achieve the NAAQS by the applicable attainment date.  Cal. Health & Safety Code § 39602.5(a).  And regarding greenhouse gases, the Legislature directed CARB to adopt emissions reduction measures by regulation "to achieve the maximum technologically feasible and cost-effective reductions in greenhouse gas emissions in furtherance of achieving the statewide greenhouse gas emissions limit . . . ."  Cal. Health & Safety Code § 38562.

## II.   THE ACC II REGULATIONS

Consistent and in accordance with these and other legislative directives, on August 25, 2022, following public review and comment periods, CARB adopted the ACC II regulations.  Request for Judicial Notice (RJN), Ex. A at 17–18.  The ACC II regulations seek to control and reduce motor vehicle emissions to further curb criteria, toxic, and greenhouse gas emissions in two primary ways: first, by increasing the stringency of emission standards for internal combustion engine vehicles, thereby ensuring emissions are reduced under real-world operating conditions; and second, by reducing emissions through increasing the requirements for zero-emission vehicles (ZEVs)—vehicles that do not emit any exhaust or evaporative air pollution—beginning with the 2026 model year.  *Id*. at 17–21.  The ACC II regulations would, among other things, increase annual sales requirements of ZEVs and plug-in hybrid-electric vehicles between

1  2026 and 2035 until such vehicles constitute 100 percent of all new motor vehicles sold in

2  California.  *Id.* at 13.[1]

3  **LEGAL STANDARD**

4       A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) is premised on the

5  claim that the court lacks subject matter jurisdiction.  *See, e.g., Savage v. Glendale Union High*

6  *Sch.*, 343 F.3d 1036, 1039–40 (9th Cir. 2003).  Federal courts are courts of limited jurisdiction, so

7  "a federal court is presumed to lack jurisdiction in a particular case unless the contrary

8  affirmatively appears."  *Stock W., Inc. v. Confederated Tribes*, 873 F.2d 1221, 1225 (9th Cir.

9  1989).  A party who brings a Rule 12(b)(1) challenge may do so by referring to the face of the

10  pleadings or by presenting extrinsic evidence.  *See White v. Lee*, 227 F.3d 1214, 1242 (9th Cir.

11  2000); *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  Courts must accept

12  the allegations of the complaint as true in a facial attack.  *De La Cruz v. Tormey*, 582 F.2d 45, 62

13  (9th Cir. 1978).

14       A motion to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) tests the

15  sufficiency of the complaint.  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  In ruling on a

16  motion to dismiss, the Court may consider allegations contained in the pleadings, exhibits

17  attached to the complaint, and documents and matters properly subject to judicial notice.

18  *Outdoor Media Group, Inc. v. City of Beaumont*, 506 F.3d 895, 899 (9th Cir. 2007).  Dismissal is

19  proper where the complaint does not contain enough factual allegations, when taken as true, to

20  establish plausible, as opposed to merely possible or speculative, entitlement to relief.  *Bell*

21  *Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Although detailed factual allegations are

22  not required, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned,

23  the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

24  Courts should not "supply essential elements of the claim that were not initially pled."  *Chapman*

25  *v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 954 (9th Cir. 2011).  Additionally, courts "need not

26

27      [1]  The vehicles ACC II regulates emit a substantial portion of California's greenhouse gas emissions.  *See* Cal. Health & Safety Code § 44274.4 (West 2022) ("The transportation sector accounts for almost 50 percent of the emissions of greenhouse gases in California, with light-duty

28  vehicles making up 70 percent of the sector's emissions.").

4

1    accept as true legal conclusions couched as factual allegations." *Wilson v. Craver*, 994 F.3d

2    1085, 1090 (9th Cir. 2021).

3         Dismissal without leave to amend is appropriate when deficiencies in the complaint could

4    not possibly be cured by amendment. *See Jackson v. Carey*, 353 F.3d 750, 758 (9th Cir. 2003);

5    *see also Watison v. Carter*, 668 F.3d 1108, 1117 (9th Cir. 2012).

6                                          **ARGUMENT**

7         The Court should dismiss the Petition and may do so on two alternative grounds.  First,

8    Petitioners cannot establish standing because they do not allege any harm to themselves, either as

9    individuals or as an organization, that is plausibly tied to the ACC II regulations.  The Petition

10   should be dismissed on this ground alone.

11        Alternatively, the Court should dismiss the Petition because Petitioners fail to state a claim

12   that CARB's adoption of the ACC II regulations violates their due process and equal protection

13   rights.  Petitioners fail to allege facts sufficient to establish that CARB's promulgation of the

14   ACC II regulations deprived Petitioners of a fundamental right or violated their due process

15   rights.  Petitioners also fail to, and cannot, allege that CARB was motivated by a racially

16   discriminatory intent or purpose in violation of the equal protection clause of the federal or

17   California constitutions when it promulgated the ACC II regulations.  Thus, the Court should

18   dismiss Petitioners' federal law (and state constitutional) claims, decline to exercise supplemental

19   jurisdiction, and dismiss Petitioners' remaining state-law CEQA and California APA claims.

20        If the Court does not dismiss the Petition in its entirety on either ground, the Eleventh

21   Amendment's grant of sovereign immunity bars all of Petitioners' claims against CARB, as well

22   as the state-law claims against CARB's Executive Officer.

23   **I.    PETITIONERS FAIL TO ESTABLISH ARTICLE III STANDING**

24        Petitioners fail to establish standing.  Article III, § 2 gives federal courts the power to

25   adjudicate only genuine cases and controversies and is the constitutional basis for the requirement

26   that parties have standing. *California v. Texas*, 141 S. Ct. 2104, 2113 (2021).  A plaintiff has

27   standing if it can "allege personal injury fairly traceable to the defendant's allegedly unlawful

28   conduct [that is] likely to be redressed by the requested relief." *Daimler Chrysler Corp. v. Cuno*,

                                               5

1  547 U.S. 332, 342 (2006) (internal quotation marks omitted).  For an injury to be "concrete" and

2  "particularized" it must be "real and not abstract."  *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338–40

3  (2016) (internal quotation marks omitted).  A plaintiff must demonstrate standing for each claim

4  and each form of relief sought.  *Davis v. Federal Election Comm'n*, 554 U.S. 724, 734 (2008).

5  Here, the individual Petitioners allege they are injured by denial of "due process and equal

6  protection of the laws both in the rule-making process and the effect the [ACC] II regulation will

7  have on the availability and affordability of necessary private transportation."  Pet. ¶ 22.  To the

8  extent Petitioners mean to assert a procedural injury by their reference to denial of due process,

9  they cannot establish standing simply by asserting procedural error.  Rather, courts "may

10  recognize" such an injury "when a procedural requirement has not been met, *so long as the*

11  *plaintiff also asserts a 'concrete interest' that is threatened by the failure to comply with that*

12  *requirement*."  *City of Sausalito v. O'Neill*, 386 F.3d 1186, 1197 (9th Cir. 2004) (emphasis

13  added).  Thus, although they arguably purport to present two standing theories, Petitioners'

14  standing turns on whether they have plausibly alleged that "the effect" of ACC II injures

15  Petitioners in a way that this Court can redress.  They have not.

16  Indeed, Petitioners do not allege that ACC II will cause injury to Robert J. Apodaca or Jose

17  Antonio Ramirez in any way.  Rather, they focus on the alleged effects that Petitioners claim

18  ACC II will have on low-income Californians who need inexpensive transportation. *E.g.*, Pet.

19  ¶ 41.  Specifically, Petitioners allege that inexpensive used cars "are critical to the state's poor

20  and lower income families" and that ACC II will "phase-out" supply of such used cars.  Pet.

21  ¶¶ 33, 39; *see also id.* ¶ 41.  But, in any event, there are no allegations that either named

22  Petitioner is a low-income Californian who wants or needs an inexpensive car.  Indeed, the

23  allegations that describe Mr. Apodaca's and Mr. Ramirez's circumstances contain no factual

24  allegations about their economic circumstances or their transportation needs.  Pet. ¶¶ 19, 20.

25  Petitioners' conclusory allegations that ACC II "will inevitably cause serious harm to the ability

26  of Petitioners and other members of disadvantaged minority communities to gain access to

27  necessary, affordable and reliable transportation and will accordingly have a disproportionate

28  adverse impact on them" are inadequate to support standing.  Pet. ¶ 63; *Carrico v. City & Cnty. of*

6

1   *San Francisco*, 656 F.3d 1002, 1006 (9th Cir. 2011) ("This conclusory allegation is insufficient to

2   establish standing.").  The Petition contains "no specific factual allegations plausibly tying" the

3   ACC II regulations to any effects on these individual Petitioners, much less any injury that could

4   be redressed here.  *Daniel v. Nat'l Park Serv.*, 891 F.3d 762, 767 (9th Cir. 2018).

5          The other Petitioner—the Two Hundred for Homeownership—also lacks standing.  As an

6   entity, it must show either that the organization itself satisfies all three elements for standing or

7   that it has "'associational' or 'representational' standing" and "may bring [this] suit on behalf of

8   its members." *Fleck & Assocs., Inc. v. City of Phoenix*, 471 F.3d 1100, 1105–06 (9th Cir. 2006).

9   The Two Hundred did not and cannot plausibly allege either standing theory.  As with the

10  individual Petitioners, the Petition contains no factual allegations about the effects the ACC II

11  regulations will have on *it*.  The Petition also fails to identify any members of the Two Hundred

12  who will be injured by the effects Petitioners claim ACC II will have.  *See id.*; *see also Black*

13  *Fac. Ass'n of Mesa Coll. v. San Diego Cmty. Coll. Dist.*, 664 F.2d 1153, 1157 (9th Cir. 1981).

14         Finally, the Two Hundred alleges that it has been injured because (1) it was "forced," in the

15  past, "to divert time and resources from its advocacy for affordable homeownership to defeating"

16  ACC II, and (2) "will be forced," in the future, to similarly divert resources to "counteract

17  CARB's enactment and implementation of the [ACC] II regulation."  Even accepting, *arguendo*,

18  that the first allegation could establish injury,[2] this Court cannot redress—and Petitioners do not

19  seek relief for—alleged past diversions of the organization's resources.  *Bras v. California Pub.*

20  *Util. Comm'n,* 59 F.3d 869, 873 (9th Cir. 1995), *cert. denied*, 516 U.S. 1084 (1996) (plaintiff

21  seeking declaratory and injunctive relief must also show a very significant possibility of *future*

22  harm; it is insufficient to demonstrate only a *past* injury); Pet. ¶¶ 101–104.

23         The second allegation of a future harm is both conclusory and speculative.  There is no

24  indication of what the organization will allegedly be forced to do, much less why it would be

25  *forced* to do anything in particular.  *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 416 (2013)

26  (plaintiff "cannot manufacture standing merely by inflicting harm on themselves based on their

27         [2]  In essence, the Two Hundred alleges injury from exercising its right to petition the
     government and participate in the public processes state agencies follow to develop regulations to
28   carry out legislative directions.  That is not a harm.

7

1   fears of hypothetical future harm that is not certainly impending"); *Lujan v. Defs. of Wildlife*, 504

2   U.S. 555, 561–62 (1992) (where petitioner is not direct object of government action or inaction

3   challenged, standing is not necessarily precluded, but is ordinarily more difficult to establish); *La*

4   *Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*, 624 F.3d 1083, 1088 (9th Cir.

5   2010) (organization "cannot manufacture the injury by incurring litigation costs or simply

6   choosing to spend money fixing a problem that otherwise would not affect the organization at all.

7   It must instead show that it would have suffered some other injury if it had not diverted resources

8   to counteracting the problem.").

9        Accordingly, Petitioners have failed to establish Article III standing and the Court should

10   dismiss all of their claims.

11   **II.   PETITIONERS FAIL TO STATE A CLAIM FOR VIOLATIONS OF EQUAL PROTECTION
          OF LAW AND DUE PROCESS**

12

13       Alternatively, the Court should dismiss the First, Second, Third, and Fourth Claims for

14   failure to state a claim.  Fed. R. Civ. P. 12(b)(6).  Petitioners' Third and Fourth Claims for

15   violation of the federal Equal Protection Clause and the equal protection clause of Art. I, § 7 of

16   the California Constitution fail because Petitioners have not alleged facts sufficient to show that

17   the ACC II regulations are arbitrary or not rationally related to a legitimate state interest.  In

18   addition, Petitioners' First and Second Claims fail to allege facts sufficient to state a claim that

19   CARB's approval of the ACC II regulations violates Petitioners' right to procedural or

20   substantive due process under the Fourteenth Amendment of the U.S. Constitution and Art. I, § 7

21   of the California Constitution.  Pet. ¶¶ 5, 61–65, 66–70.  Finally, Petitioners' First Claim, for

22   violation of the Fourteenth Amendment, (1) fails to identify an applicable liberty or property

23   interest protected by the state or federal Constitutions, as is required to bring a substantive or

24   procedural due process claim; and (2) fails to establish that CARB did not provide Petitioners

25   with an opportunity to participate in the regulatory rulemaking process such that Petitioners were

26   deprived of a liberty or property interest without due process, even if they had such an interest.

27   Accordingly, Petitioners' First, Second, Third, and Fourth Claims should be dismissed.  The

28

1    Court should also decline to exercise supplemental jurisdiction over, and dismiss, Petitioners'

2    Fifth (California APA) and Sixth (CEQA) Claims.

3        **A.    Petitioners' Equal Protection Claims are Defective Because Petitioners Fail
                  to Show that the ACC II Regulations are not Rationally Related to a
4                 Legitimate State Government Interest.**

5            Petitioners appear to assert claims for violations of the federal and state Equal Protection

6    Clauses under two theories: (1) protections of the fundamental right to travel, and (2) the

7    prohibition on government denying persons equal protection of the law.  However, Petitioners'

8    Third and Fourth Claims (Pet. ¶¶ 71–76, 77–81) fail to allege sufficient facts to state a claim

9    under either theory because Petitioners fail to allege facts that their fundamental right to travel is

10   jeopardized by the ACC II regulations, that the regulations result in a discriminatory

11   classification, or that they are so arbitrary that they deny Petitioners equal protection of the law.

12       **1.    The ACC II Regulations do not jeopardize the exercise of a
                  fundamental right.**
13

14           Petitioners appear to reference the fundamental right to travel in their allegations that the

15   ACC II regulations violate their equal protection rights.  Pet. ¶¶ 51, 72–73.[3]  The Fourteenth

16   Amendment's Privileges or Immunities Clause enshrines a fundamental "constitutional right to

17   travel from one State to another."  *Saenz v. Roe*, 526 U.S. 489, 498 (1999).  Similarly, Art. I § 7

18   of the California Constitution recognizes the right to travel between states and within the state, as

19   well as the right to travel within a municipality.  *People v. Moran*, 1 Cal. 5th 398, 405–06 (2016);

20   *Tobe v. City of Santa Ana*, 9 Cal. 4th 1069 (1995).  However, "[b]urdens placed on travel

21   generally, such as gasoline taxes, or minor burdens impacting interstate travel, such as toll roads,

22   do not constitute a violation of [the right to travel]."  *Miller v. Reed*, 176 F.3d 1202, 1205 (9th

23   Cir. 1999) (constitutional right to travel not violated by denial of application to renew license due

24   to plaintiff's failure to submit social security number with renewal application, as required under

25   California law); *Moran*, 1 Cal. 5th at 406 (reasonable and incidental restrictions on probationer's

26   movement as a condition of probation did not violate the constitutional right to travel).  Nor do

27   _____
         [3] Petitioners also reference a right to "non-discriminatory access to private
28   transportation."  Pet. ¶ 72.  But that is not a recognized fundamental right.  *See Miller v. Reed*,
     176 F.3d 1202, 1205 (9th Cir. 1999).

                                                9

1   burdens on a single mode of transportation implicate the right to interstate travel. *Miller*, 176

2   F.3d at 1205 (citing *Monarch Travel Servs., Inc. v. Associated Cultural Clubs, Inc.*, 466 F.2d 552,

3   554 (9th Cir. 1972); *see also Gilmore v. Gonzales*, 435 F.3d 1125, 1136 (9th Cir. 2006) ("the

4   Constitution does not guarantee the right to travel by any particular form of transportation." *Id*. at

5   1136). Only statutes, rules, or regulations that unreasonably burden or restrict the right to

6   interstate travel are constitutionally impermissible. *See Shapiro v. Thompson,* 394 U.S. 618, 629

7   (1969) overruled on another ground in *Edelman*, 415 U.S. at 651.

8         Here, Petitioners fail to state a claim that the ACC II regulations restrict their right to

9   interstate travel under the Fourteenth Amendment (or the right to travel within the state and its

10   municipalities under the California Constitution) at all, let alone discriminate between groups

11   regarding the exercise of that right. Petitioners conclude that by increasing the ZEV

12   requirements, the ACC II regulations will make private motor vehicle transportation unaffordable

13   for low-income households. Pet. ¶ 41. Petitioners seek to extend the right to travel to a

14   consumer's ability to purchase private transportation at the lowest price the market will bear,

15   without any additional cost stemming from any regulatory requirements. If accepted, Petitioners'

16   position could also implicate a significant number of regulations that might incidentally affect the

17   cost of vehicles, such as seat belt, air bag, or catalytic converter regulations. But that would be

18   contrary to well-established law regarding limits on the right to travel. *Sanchez v. City of Fresno*,

19   914 F. Supp. 2d 1079, 1110 (E.D. Cal. 2012). And, as explained directly above, because even

20   significant burdens on a single mode of transportation do not implicate the right to interstate

21   travel, reasonable regulations on motor vehicles for health and safety purposes, including the

22   ACC II emission regulations, certainly do not. *See Monarch Travel Servs., Inc. v. Associated*

23   *Cultural Clubs, Inc.*, 466 F.2d 552, 554 (9th Cir. 1972); *see also Nevada v. Matlean,* No. 3:08-

24   CV-505-BES-VPC, 2009 WL 1810759, at *2 (D. Nev. June 24, 2009) (state laws "do put some

25   restrictions on drivers in that they require them to follow certain rules if they are to enjoy the

26   privilege of driving on public roads and highways," but "such requirements do not impede [the]

27   right to travel."). The Petition is otherwise devoid of factual allegations that CARB's approval of

28   the ACC II regulations jeopardizes the right to travel.

10

Next, the alleged impact of the ACC II regulations on the affordability of car ownership affecting the fundamental right to travel is, at best, an incidental impact. *See* Pet. ¶¶ 39–41. "[A] law having an incidental impact on travel . . . but having a purpose other than restriction of the right to travel, and which does not discriminate among classes of persons by penalizing the exercise by some of the right to travel, is constitutionally permissible." *Sanchez*, 914 F. Supp. 2d at 1110 (*citing Tobe*, 9 Cal. 4th at 1100). A plaintiff may allege an equal protection violation in a number of ways with varying levels of scrutiny. State actions that impinge on fundamental rights protected by the Constitution are subjected to "strict scrutiny" and "will be sustained only if they are suitably tailored to serve a compelling state interest." *City of Cleburne, Tex. v. Cleburne Living Center*, 473 U.S. 432, 439 (1985) (*Cleburne*). Petitioners cannot allege facts to establish that the ACC II regulations impinge upon the fundamental right to travel.

Petitioners make the conclusory allegation that the ACC II regulations restrict the right to travel by affecting the ability of minority, but not non-minority persons, to purchase vehicles. Pet. ¶¶ 41, 72–73. But they allege no facts explaining how the regulations discriminate, nor could they. Beginning with the 2026 model year, the ACC II regulations increase the stringency of emission standards for internal combustion engine vehicles, ensure emissions are reduced under real-world operating conditions, and reduce and eliminate air emissions by increasing the requirements for ZEVs. Cal. Code Regs. tit 13, §§ 1961.4, 1962.4. Notably, the ACC II regulations apply to manufacturers of new vehicles, not individual natural persons; apply uniformly to all new vehicles in the regulated categories; do not ban the public's use of motor vehicles for travel; do not apply to used vehicles; and allow for the continued sale of new vehicles that meet the emission standards. Cal. Code Regs. tit 13, §§ 1961.4, 1962.4. Petitioners fail to allege facts to show that the ACC II regulations prevent or restrict Petitioners' access to travel.

Moreover, Petitioners fail to allege that the ACC II regulations discriminate among protected classes of persons by penalizing the exercise of those persons' right to travel differently than others similarly situated, or penalize the exercise of the right to travel, more broadly. *Id.* Petitioners do not allege that the ACC II regulations preclude continued use of existing vehicles, or prohibit the purchase of new or used vehicles by any protected class of persons. Petitioners

11

further fail to, and cannot, allege any facts that the ACC II regulations actually discriminate on the basis of any protected classification.  Petitioners' conclusory allegations regarding the cost of ZEVs are insufficient to establish a claim that the ACC II regulations deprive Petitioners of the right to travel.  Because Petitioners fail to allege that the ACC II regulations jeopardize, incidentally or otherwise, or discriminate with respect to the fundamental right to travel, the Third and Fourth Claims should be dismissed.

> **2.    Petitioners fail to present sufficient allegations to show that the ACC II Regulations are not rationally related to the State's legitimate interest in reducing greenhouse gas emissions and pollution from motor vehicles.**

A plaintiff may allege that "defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." *Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir. 2001) (internal citations and quotations omitted).  Such actions are also subject to strict scrutiny.  *Cleburne*, 473 U.S. at 439.

Here, Petitioners do not allege facts to support a claim that CARB adopted the ACC II regulations with an intent or purpose to discriminate against Petitioners based on their membership in a racial minority group.  Instead, Petitioners focus on the alleged *impact* of the ACC II regulations on the ability of low-income individuals to purchase low cost motor vehicles, and conclude that many of those low-income individuals would also be members of racial minority groups.  Pet. ¶¶ 36–41, 73, 79.  That is insufficient to state a claim, however, because a facially neutral state action does not violate the right of equal protection simply because it may result in a racially disproportionate impact.  *Village of Arlington Heights v. Metropolitan Housing Development Corp.*,  429 U.S. 25 2 (1997).  Rather, "[p]roof of racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause." *Id.*

Petitioners do not allege facts to show racially discriminatory intent or purpose.  Instead, Petitioners allege that the ACC II regulations "virtually ignored" the economic impacts to poor and working minority families "while offering up only a token and ineffective alm in the form of a promised EV rebate" (Pet. ¶ 3); and that the regulations harm attainable homeownership by depriving minority families of "attainable, affordable, and reliable transportation."  Pet. ¶ 18.

12

1   These conclusory allegations fail to plausibly plead that CARB acted with any intent or purpose

2   to target any racial minority groups, including the group to which Petitioners allegedly belong or

3   represent, in a manner that would trigger review under heightened scrutiny.

4         Next, the equal protection clause of the Fourteenth Amendment and California Constitution

5   protect people outside of protected classes as well, but differences in treatment that do not

6   implicate fundamental rights or protected classes are reviewed deferentially under rational basis

7   review.  *Cleburne*, 473 U.S. at 439; *Brown v. Merlo*, 8 Cal. 3d 855, 861 (1973).  "[W]hen a policy

8   distinguishes one group of persons from another, that distinction must be rationally related to a

9   legitimate governmental purpose."  *Sanchez*, 914 F. Supp. 2d at 1108.  "Under rational basis

10  review, legislation that does not draw a distinction along suspect lines such as race or gender

11  passes muster under the Equal Protection Clause as long as there is any reasonably conceivable

12  state of facts that could provide a rational basis for the classification."  *Angelotti Chiropractic,*

13  *Inc. v. Baker*, 791 F.3d 1075, 1085 (9th Cir. 2015) (citation and internal quotation omitted); *see*

14  *also F.C.C. v. Beach Communications*, 508 U.S. 307, 315 (1993).

15        Petitioners' equal protection claims should be dismissed because Petitioners fail to allege

16  sufficient facts to establish that the ACC II regulations are not rationally related to a legitimate

17  government interest.  In fact, Petitioners acknowledge that California has a legitimate interest in

18  reducing greenhouse gas emissions and other pollutants caused by motor vehicles, improving the

19  environment, and protecting public health.  Pet. ¶¶ 13, 64.  The ACC II regulations seek to control

20  and eliminate motor vehicle emissions to further curb criteria pollutant, toxic, and greenhouse gas

21  emissions by increasing the stringency of emission standards for internal combustion engine

22  vehicles, ensuring emissions are reduced under real-world operating conditions, and reducing

23  emissions by increasing the requirements for ZEVs beginning with the 2026 model year.  Legal

24  Background section II, *ante*.  Petitioners acknowledge this purpose.  Pet. ¶ 4.

25        Despite this, Petitioners contend, without any factual allegations, that the ACC II

26  regulations "will worsen, not improve local air quality and global greenhouse gas emissions" (Pet.

27  ¶ 42) and are "arbitrary, and counter-productive State regulations and standards."  Pet. ¶¶ 73, 79.

28  Petitioners provide studies to link car ownership to economic opportunities for poor and working

13

1    families to contend that the ACC II regulations cause "racially disparate harm" by "banning the

2    source of ongoing, reliable, cost-effective and low emission cars that are affordable in the used

3    car market . . . ."  Pet. ¶ 41; *see* Pet. ¶¶ 35–40.  But Petitioners' conclusory allegations are

4    insufficient, given the strong presumption of validity under rational-basis review of the

5    regulations.  *Iqbal*, 556 U.S. at 677–79; *see F.C.C.*, 508 U.S. at 314–15 ("those attacking the

6    rationality of the legislative classification have the burden to negative every conceivable basis

7    which might support it . . . ." (internal citations and quotations omitted)).  That is, the Petition

8    fails to present supported allegations to plausibly plead that the regulations were so irrational or

9    unsupported to render them unconstitutional.  Thus, Petitioners have failed to allege that the

10    ACC II regulations are not rationally related to a legitimate government interest.

11          **B.**    **Petitioners Fail to State a Claim for Violation of the Fundamental Right to**
                   **Travel or the Right to be Free from Arbitrary Government Regulations.**

12

13        In their First and Second Claim, Petitioners allege that CARB's approval of the ACC II

14    regulations violates their right to procedural and substantive due process under the federal and

15    California constitutions.  Pet. ¶¶ 5, 61–70.  Petitioners are mistaken.

16        The government may not deprive a person of life, liberty, or property rights without first

17    providing an adequate process.  *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985);

18    Cal. Const., Art. I, § 7(a) ("a person may not be deprived of life, liberty, or property without due

19    process of law.")  "To obtain relief on § 1983 claims based upon procedural due process, the

20    plaintiff must establish the existence of (1) a liberty or property interest protected by the

21    Constitution; (2) a deprivation of the interest by the government; [and] (3) lack of process."

22    *Guatay Christian Fellowship v. Cty. of San Diego*, 670 F.3d 957, 984 (9th Cir. 2011) (citation and

23    internal quotation omitted).  To succeed, a plaintiff must not only show that their rights or

24    interests are protected, but also that the government defendants deprived them of those interests

25    or rights.  *Shanks v. Dressel*, 540 F.3d 1082, 1090 (9th Cir. 2008); *Guatay*, 670 F.3d at 984.  The

26    due process provision of the California Constitution is identical in purpose and scope to the Due

27    Process Clause of the Fourteenth Amendment.  *Russell v. Carleson*, 36 Cal. App. 3d 334 (3d Dist.

28    1973).

1.    **Petitioners fail to identify a cognizable liberty or property interest protected by either the Federal or California Constitution.**

To state a "due process claim, the plaintiff must show as a threshold matter that a state actor deprived it of a constitutionally protected life, liberty or property interest." *Shanks*, 540 F.3d at 1087.  Petitioners appear to allege that the ACC II regulations violated their fundamental right to travel and their "right to be free from 'arbitrary' regulatory rulemaking." Pet. ¶¶ 51, 62–63, 67–68.[4]  But none of Petitioners' conclusory allegations establishes the threshold requirement that CARB deprived Petitioners of a protected life, liberty, or property interest.

Petitioners appear to allege that the ACC II regulations operate to deprive them of their fundamental right to travel, which is a protected liberty interest.  But the regulations do no such thing.  A law, like the ACC II regulations, is constitutionally permissible if it incidentally impacts travel, has a purpose other than restriction of the right to travel, and does not discriminate among classes of persons by penalizing the exercise by some of the right to travel.  *Sanchez*, 914 F. Supp. 2d at 1110; *Moran*, 1 Cal. 5th at 406.  By contrast, a state law implicates the constitutional right to travel when it actually deters such travel, when impeding travel is its primary objective, or when it uses any classification that serves to penalize the exercise of that right.  *Sanchez*, 914 F. Supp. 2d at 1110; *People v. Parker*, 141 Cal. App. 4th 1297 (2d Dist. 2006).

Here, Petitioners do not, and cannot, allege that the ACC II regulations actually deter travel or that impeding travel is the primary objective.  In fact, Petitioners acknowledge that the purpose of the ACC II regulations is to reduce criteria, toxic, and greenhouse gas emissions from motor vehicles.  Pet. ¶ 4; *see also* Legal Background section II, *ante*.  Petitioners also allege that new ZEVs cost more than conventional motor vehicles with internal combustion engines.  Pet. ¶¶ 39–41.  Petitioners conclude that the alleged price difference will cause a disparate impact on the future ability of low-income individuals to purchase affordable vehicles, which would impact daily driving activities.  *Id*. at ¶¶ 3, 39–41.  But the bare allegation that ZEVs cost more to purchase than conventional motor vehicles does not support Petitioners' premise that the ACC II

---

[4]  Petitioners also reference "access to necessary, affordable and reliable transportation." Pet.¶ 63.  But that is not a recognized fundamental right.  *See Miller*, 176 F.3d at 1205.

15

1  regulations would have more than an incidental impact on travel.  These conclusory allegations

2  do not rise to the level of a constitutional violation.  *Sanchez*, 914 F. Supp. 2d at 1110.  Finally, as

3  set forth in Argument section II(A)(2), *ante*, the ACC II regulations do not discriminate among

4  classes of persons by penalizing the exercise by some of the right to travel.  *Id*.  Accordingly,

5  Petitioners have not pled that the regulations actually deter travel, or that impeding travel is the

6  primary objective of the regulations.

    **2.    Petitioners fail to sufficiently allege facts to claim that CARB's**
7   **adoption of the ACC II regulations resulted in a deprivation of any**
8   **liberty or property interest without due process.**

9        Even if Petitioners had alleged a cognizable property or liberty interest, they have not

10  adequately alleged that CARB denied them due process before a deprivation of that interest

11  occurred.  "The fundamental requirement of due process is the opportunity to be heard at a

12  meaningful time and in a meaningful manner."  *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)

13  (citation and quotation marks omitted).  Petitioners allege that CARB approved the ACC II

14  regulations without first presenting them "to the public through duly-authorized rulemaking

15  processes . . ." resulting in a violation of their liberty interest to be "free of arbitrary State

16  regulations that are imposed without having first been presented to the public through duly-

17  authorized rulemaking processes by Legislatively-authorized State agencies."  Pet. ¶¶ 62, 67.  But

18  Petitioners undermine their own argument because they also allege that CARB provided public

19  notice and an opportunity to be heard on the ACC II regulations, and that Petitioners participated

20  in that public rulemaking process.  Pet. ¶¶ 28–31, 82–90 [Fifth Claim for violation of California

21  APA does not allege that CARB violated notice or comment provisions], 99 [Sixth Claim for

22  violations of CEQA alleges that "Petitioners raised each of the legal deficiencies asserted in [the]

23  Petition" before CARB].  Specifically, Petitioners allege that "[d]uring the course of the [ACC II]

24  rule-making process, through its counsel, The Two Hundred submitted comments" on CARB's

25  Environmental Analysis (Pet. ¶ 30), and that "The Two Hundred submitted as part of the record

26  . . . its comments on the Draft 2022 Scoping Plan."  Pet. ¶ 54.  While Petitioners allege that

27  CARB did not meaningfully *respond* to their comments to the Environmental Analysis

28  (Pet. ¶ 57), the allegations that CARB provided a notice and comment process in which

16

1   Petitioners participated negate the assertion that CARB denied Petitioners due process.  And,

2   indeed, the rulemaking file for ACC II regulations is a matter of public record: CARB made the

3   proposed regulations available for comment beginning April 12, 2022, and held public hearings

4   on June 9 and August 25, 2022, with two additional comment periods starting on July 12 and

5   August 8, 2022.  RJN, Ex. B at 1, 10–17.

6          Petitioners do not allege that the notice and comment process violated the federal and State

7   procedural due process protections.  Instead, Petitioners allege that certain rulemaking documents

8   were only available for in-person review, which they allege was "deeply disrespectful" and also

9   allege, without support, that "[m]any of these documents could instantly be posted on the CARB

10  website . . . ." Pet. ¶ 31.  These allegations do not suggest that the availability of these documents

11  involved a lack of process or violated a legal obligation.  *Id*.  Petitioners fail to acknowledge that

12  many of the documents were accessible via a hyperlink included in CARB's notice, or that some

13  of the documents available for in-person review were protected by private copyright that

14  precluded CARB from publicly posting those documents.  *See* RJN, Ex. C at 2–4.  Further,

15  Petitioners fail to allege that they attempted to avail themselves of the process available for

16  review of the documents or otherwise contacted CARB to determine, for example, if it was

17  possible to obtain a copy of the documents without travelling to Sacramento.  In sum, Petitioners

18  fail to allege facts to state a claim that CARB denied Petitioners an opportunity to be heard at a

19  meaningful time and in a meaningful manner that resulted in a deprivation of their procedural or

20  substantive due process rights before an alleged deprivation occurred.

21          **3.    Petitioners fail to allege facts to show that the ACC II regulations are
           unreasonable, arbitrary, or contrary to law.**

22

23          Finally, the Petition is devoid of factual allegations to show that the ACC II regulations

24  were so unreasonable or arbitrary that they result in a substantive due process violation to

25  Petitioners' alleged liberty interest to be free from arbitrary government regulations.  A general

26  principle of the right to due process is to restrain government from arbitrary and unreasonable

27  exercise of power, and substantive due process is a limitation on arbitrary power and a guarantee

28  against arbitrary legislation.  *Nebbia v. People of New York*, 291 U.S. 502, 525 (1934).  The due

17

1  process clause requires that a law must not be unreasonable, arbitrary, or capricious but must have

2  a real and substantial relation to the object sought to be attained.  *Id.*; *Rental Hous. Owners Assn.*

3  *of S. Alameda Cnty., Inc. v. City of Hayward*, 200 Cal. App. 4th 81, 93 (2011).  Petitioners fail to

4  allege sufficient facts to show that the ACC II regulations are unreasonable or arbitrary and cause

5  a substantive due process violation.  On the contrary, the regulations are rationally related to the

6  State's important interest in reducing air pollution.  *See* Argument section II(A)(2), *ante*.  Because

7  Petitioners fail to allege facts establishing a fundamental right upon which the ACC II regulations

8  could infringe, the First and Second Claims for violation of the federal and state due process

9  clause should be dismissed.

10      **C.    The Court Should Decline to Exercise Supplemental Jurisdiction Over the**
        **Remaining State-Law Claims in the Petition.**

11

12      Because Petitioners' federal claims fail, the Court should also dismiss Petitioners' state-law

13  claims.  28 U.S.C. § 1367(c)(1) & (3).  "When federal claims are dismissed before trial . . . state

14  claims also should be dismissed."  *Religious Tech. Ctr. v. Wollersheim*, 971 F.2d 364, 367–68

15  (9th Cir. 1992) (internal quotation marks omitted); *see also Slidewaters LLC v. Washington State*

16  *Dep't of Lab. & Indus.*, 4 F.4th 747, 761–62 (9th Cir. 2021) (court properly declined to exercise

17  jurisdiction over remaining state-law claims where court dismissed federal law claims before

18  trial); *Brown v. Lucky Stores, Inc.*, 246 F.3d 1182, 1189 (9th Cir. 2001).  Accordingly,

19  Petitioners' Fifth and Sixth Claims that arise under the California APA and CEQA should also be

20  dismissed.[5]

21      For the foregoing reasons, the Petition should be dismissed in its entirety without leave to

22  amend because "it is clear that the complaint [can] not be saved by any amendment."  *Livid*

23  *Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005).

24

25

26

27      _____

        [5]  To the extent the Court does not dismiss the Second or Fourth Claim for the reasons
28  provided in Argument Section II(A) & (B), but does dismiss the federal claims, the Court should
    decline to exercise supplemental jurisdiction and dismiss the Second and Fourth Claim.

18

1    **III.    SOVEREIGN IMMUNITY BARS ALL OF PETITIONERS' CLAIMS AGAINST CARB, AS WELL AS THEIR STATE-LAW CLAIMS AGAINST CARB'S EXECUTIVE OFFICER**

2

3    **A.    The Eleventh Amendment Bars Petitioners' Federal Claims Against CARB.**

4         The Court lacks subject matter jurisdiction over CARB in this action because sovereign

5    immunity bars Petitioners' claims against CARB.  Under the Eleventh Amendment, a state is

6    immune from suits brought in federal court by its own citizens or citizens of other states.

7    *Papasan v. Allain*, 478 U.S. 265, 276 (1986); *Walden v. Nevada*, 945 F.3d 1088, 1092 (9th Cir.

8    2019).  The Eleventh Amendment also bars actions in federal court against state agencies,

9    instrumentalities of a state, and officials of a state acting in their official capacity.  *See Krainski v.*

10   *State ex rel. Bd. of Regents*, 616 F.3d 963, 967 (9th Cir. 2010); *Shaw v. State of Cal. Dept. of*

11   *Alcoholic Beverage Control*, 788 F.2d 600, 603 (9th Cir. 1986).  This immunity includes civil

12   rights claims brought against the state under 42 U.S.C. § 1983.  *Dittman v. California*, 191 F.3d

13   1020, 1025–26 (9th Cir. 1999).  It also includes pendent state-law claims against state defendants

14   in federal courts.  *Raygor v. Regents of the University of Minnesota*, 534 U.S. 533, 540–41

15   (2002).

16        Petitioners' claims against CARB are barred by the Eleventh Amendment.  State agencies

17   are "entitled to sovereign immunity under the Eleventh Amendment," unless that immunity is

18   waived.  *Greenlaw v. Cnty. of Santa Clara*, 125 F. App'x 809, 810 (9th Cir. 2005); *Pennhurst*

19   *State School & Hosp. v. Halderman* (1984) 465 U.S. 89, 98–102.  Petitioners have not alleged,

20   and cannot allege, that California or CARB (a state agency) have waived sovereign immunity as

21   to any of Petitioners' claims.  All claims against CARB must therefore be dismissed.

22   **B.    The Eleventh Amendment Bars Petitioners' State-Law Claims in this Court Against CARB and its Executive Officer.**

23

24        Sovereign immunity also bars Petitioners' Second, Fourth, Fifth, and Sixth Claims in this

25   Court, as to CARB and its Executive Officer, because these claims raise pure questions of state

26   law.  *Pennhurst*, 465 U.S. at 106 ("when a plaintiff alleges that a state official has violated state

27   law," then "the entire basis for the doctrine of [*Ex parte*] *Young* ... disappears").  Indeed,

28   Petitioners' prayer for relief includes a California Civil Procedure Code section 1094.5 (Section

19

1094.5) petition that appears to apply to each claim.  Pet. ¶ 104.  Petitioners' "prayer for relief is not specific as to what relief is sought with respect to which claims," so "the Court must presume all forms of relief alleged in the prayer are directed toward each claim."  *S.B. by & through Kristina B. v. California Dep't of Educ.*, 327 F. Supp. 3d 1218, 1237 (E.D. Cal. 2018).  A Section 1094.5 petition "raises substantive state law claims" and must be dismissed.  *Doe v. Regents of the University of California*, 891 F.3d 1147, 1153 (9th Cir. 2018).  It is immaterial whether the claims seek prospective or retroactive relief.  *Id.*  "The *Young* exception does not apply when a suit seeks relief under state law, even if the plaintiff names an individual state official rather than a state instrumentality as the defendant."  *Id.*[6]

Accordingly, the Eleventh Amendment bars Petitioners' state-law claims against CARB and its Executive Officer in this Court, and all of the claims should be dismissed.

## CONCLUSION

For the foregoing reasons, the Court should grant CARB's motion to dismiss.

Dated:  March 7, 2023                                   Respectfully submitted,

                                                        ROB BONTA
                                                        Attorney General of California


                                                         */s/ Emily M. Hajarizadeh*
                                                        EMILY M. HAJARIZADEH
                                                        Deputy Attorney General
                                                        *Attorneys for Respondents*
                                                        *California Air Resources Board*
                                                        *and Steven S. Cliff, Executive Officer*

---

[6]  Petitioners also ask the Court to declare that "CARB's *adoption* of the [ACC II] regulation" was unconstitutional and "set aside" that adoption.  Pet. ¶¶ 101–102, 104 (emphasis added).  But that relief is unavailable against CARB or its Executive Officer because CARB's adoption of ACC II is complete, and there is nothing about the rulemaking process itself that could constitute an ongoing violation of federal law.  *Green v. Mansour*, 474 U.S. 64, 74 (1985) (rejecting availability of "declaratory judgment that respondent violated federal law in the past"); *see also Bayer v. Neiman Marcus Grp., Inc.*, 861 F.3d 853, 868 (9th Cir. 2017).