HOLLAND & KNIGHT LLP
JENNIFER L. HERNANDEZ (SBN 114951)
BRIAN C. BUNGER (SBN 142001)
560 Mission Street, 19th Floor
San Francisco, CA 94105
Telephone: 415.743.6900
Fax: 415.743.6910
Email: jennifer.hernandez@hklaw.com
       brian.bunger@hklaw.com
Attorneys for Petitioners/Plaintiffs,
THE TWO HUNDRED, ROBERT
APODACA and JOSE ANTONIO RAMIREZ

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

FRESNO DIVISION

| | |
|---|---|
| THE TWO HUNDRED FOR HOMEOWNERSHIP, a California Nonprofit Public Benefit Corporation, ROBERT APODACA, an individual, and JOSE ANTONIO RAMIREZ, an individual,<br><br>Petitioners/Plaintiffs,<br><br>v.<br><br>CALIFORNIA AIR RESOURCES BOARD, STEVEN S. CLIFF, in his official capacity, and DOES 1-25,<br><br>Respondents/Defendants. | Case No.: 1:22-cv-01474-ADA-BAM<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**<br><br>Date: April 24, 2023<br>Time: 1:30 p.m.<br>Dept: Courtroom 1<br>Judge: Hon. Ana de Alba<br>Trial Date: Not Set<br>Action Filed: November 14, 2022 |

# TABLE OF CONTENTS

Page:

I. INTRODUCTION ...................................................................................................................1

II. STANDARD OF REVIEW ....................................................................................................1

III. LEGAL ARGUMENT.............................................................................................................2

   a. The Complaint Contains Allegations Sufficient to Establish Plaintiffs' Article III Standing. .......................................................................................................................2

   b. Plaintiffs Have Sufficiently Plead A Claim For Violation of the Due Process Clause Of the United States Constitution. ................................................................................5

      i. The ACC II Regulations Jeopardize the Fundamental Right to Travel. ......................6

      ii. The ACC II Regulations Are Not "Narrowly Tailored to Serve a Compelling State Interest."........................................................................................................................8

      iii. Even if the Court Does Not Apply Strict Scrutiny, the ACC II Regulations Are "Clearly Arbitrary And Unreasonable, Having No Substantial Relation To The Public Health, Safety, Morals Or General Welfare" Because They Have Little Relationship To The Fight Against Global Climate Change. ......................................9

   c. Plaintiffs Sufficiently Plead A Claim For Violation of the Equal Protection Clause of The United States Constitution ...................................................................................9

      i. Plaintiffs Have Sufficiently Plead That it is Plausible That CARB acted with an intent or purpose to discriminate based upon membership in a protected class. .......10

      ii. Plaintiffs Have Sufficiently Plead That it is Plausible The Regulations Are Not Rationally Related to a Legitimate Government Interest..........................................11

   d. Plaintiffs' Federal Claims are Not Barred By Sovereign Immunity.............................11

IV. CONCLUSION.....................................................................................................................14

Holland & Knight LLP
50 California Street, Suite 2800
San Francisco, CA 94111
Tel: 415.743.6900
Fax: 415.743.6910

# TABLE OF AUTHORITIES

Cases:

Page(s):

*Agua Caliente Band of Cahuilla Indians v. Hardin*
  223 F.3d 1041 (9th Cir. 2000) .................................................................................. 11, 12, 14

*Arizona Students' Ass'n. v. Arizona Board of Regents*
  824 F.3d 858 (9th Cir. 2016) ....................................................................................... 6, 11, 14

*Ashcroft v. Iqbal*
  556 U.S. 662 (2009) ............................................................................................................... 2

*Attorney General of New York v. Soto-Lopez*
  476 U.S. 898, 106 S.Ct. 2317 (1986) ..................................................................................... 7

*Barren v. Harrington*
  152 F.3d 1193 (9th Cir. 1998) ............................................................................................... 9

*Barron v. Reich*
  13 F.3d 1370 (9th Cir. 1994) ................................................................................................. 1

*Bell Atl. Corp. v. Twombly*
  550 U.S. 544 (2007) ............................................................................................................... 2

*Carrico v. City and County of San Francisco*
  656 F.3d 1002 (9th Cir. 2011) ............................................................................................... 3

*City of Sausalito v. O'Neill*
  386 F.3d 1186 (9th Cir. 2004) ............................................................................................... 3

*Columbia Basin Apartment Ass'n v. City of Pasco*
  268 F.3d 791 (9th Cir. 2001) ................................................................................................. 3

*Desert Citizens Against Pollution v. Bisson*
  231 F.3d 1172 (9th Cir. 2000) ............................................................................................... 3

*East Bay Sanctuary Covenant v. Biden*
  993 F.3d 640 (9th Cir. 2021) .............................................................................................. 4, 5

*El Rescate Legal Servs., Inc. v. Exec. Office of Immigration Review*
  959 F.2d 742 (9th Cir. 1991) ................................................................................................. 4

*Ex Parte Young*
  209 U.S. 123, 28 S.Ct. 441 (1908) ....................................................................... 11, 12, 13, 14

*Fair Hous. of Marin v. Combs*
  285 F.3d 899 (9th Cir. 2002) ................................................................................................. 4

*Furnace v. Sullivan*
  705 F.3d 1021 (9th Cir. 2013) ............................................................................................... 9

*Green v. City of Tucson*
  340 F.3d 891 (9th Cir. 2003) ............................................................................................... 10

*Green v. Mansour*
   474 U.S. 64, 106 S.Ct. 423 (1985) ............................................................................................... 12

*Grutter v. Bollinger*
   539 U.S. 306, 123 S.Ct. 2325 (2003) ........................................................................................... 10

*Hartman v. California Dep't of Corr. And Rehabilitation*
   707 F.3d 1114 (9th Cir. 2013) ....................................................................................................... 9

*Havens Realty Corp v. Coleman*
   455 U.S. 363, 102 S.Ct. 1114 (1982) ............................................................................................. 4

*Hernandez v. City of San Jose*
   897 F.3d 1125 (9th Cir. 2018) ....................................................................................................... 6

*Hutto v. Finney*
   473 U.S. 678, 98 S.Ct. 2565 (1978) ............................................................................................. 12

*Idaho v. Coeur d'Alene Tribe of Idaho*
   521 U.S. 261, 117 S.Ct. 2028 (1997) ..................................................................................... 12, 13

*Isuzu Motors Ltd. V. Consumers Union of U.S., Inc.*
   12 F.Supp.2d 1035 (C.D. Cal. 1998) ............................................................................................. 1

*Johnson v. Federal Home Mortg. Corp.*
   793 F.3d 1005 (9th Cir. 2015) ....................................................................................................... 2

*Kramer v. Union Free Sch. Dist. No. 15*
   395 U.S. 621, 89 S.Ct. 1886 (1969) ............................................................................................. 10

*Kwan v. SanMedica Int'l*
   854 F.3d 1088 (9th Cir. 2017) ....................................................................................................... 2

*La Asociacion de Trabajadores de Lake Forest v. Lake Forest*
   624 F.3d 1083 (9th Cir. 2010) ....................................................................................................... 4

*Lee v. City of Los Angeles*
   250 F.3d 668 (9th Cir. 2001) ....................................................................................................... 10

*Marder v. Lopez*
   450 F.3d 445 (9th Cir. 2006) ......................................................................................................... 6

*Memorial Hospital v. Maricopa County*
   415 U.S. 250, 94 S.Ct. 1076 (1974) ............................................................................................... 6

*Miller v. Reed*
   176 F.3d 1202 (9th Cir. 1999) ....................................................................................................... 7

*Nunez by Nunez v. City of San Diego*
   114 F.3d 935 (9th Cir. 1997) ..................................................................................................... 7, 9

*Pennhurst State School & Hosp. v. Halderman*
   465 U.S. 89, 104 S.Ct. 900 (1984) ............................................................................................... 12

Holland & Knight LLP
50 California Street, Suite 2800
San Francisco, CA  94111
Tel: 415.743.6900
Fax: 415.743.6910

*People v. Moran*
   1 Cal. 5th 398 (2016) ............................................................................................................. 7

*Plyer v. Doe*
   457 U.S. 202, 102 S.Ct. 2382 (1982) .................................................................................... 9

*Porter v. Jones*
   319 F.3d 483 (9th Cir. 2003) ............................................................................................... 13

*Reno v. Flores*
   507 U.S. 292, 113 S.Ct. 1439 (1993) ................................................................................. 6, 8

*Saenz v. Roe*
   526 U.S. 489 (1999) ........................................................................................................ 6, 10

*Starr v. Baca*
   652 F.3d 1202 (9th Cir. 2011) .......................................................................................... 2, 10

*Thinket Ink Info. Res., Inc. v. Sun Microsys., Inc.*
   368 F.3d 1053 (9th Cir. 2004) ............................................................................................. 14

*Turner v. City and County of San Francisco*
   788 F.3d 1206 (9th Cir. 2015) ............................................................................................... 2

*Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland*
   535 U.S. 635, 122 S.Ct. 1753 (2002) ............................................................................. 12, 13

*Williams v. Fears*
   179 U.S. 270 (1900) .............................................................................................................. 6

*Witt v. Department of Air Force*
   527 F.3d 806 (9th Cir. 2008) .............................................................................................. 6, 8

*Yagman v. Garcetti*
   852 F.3d 859 (9th Cir. 2017) ................................................................................................. 9

*Zimmerman v. City of Oakland*
   255 F.3d 734 (9th Cir. 2001) ................................................................................................. 6

Statutes:

F.R.C.P. 12(b)(1) ........................................................................................................................... 1

F.R.C.P. 12(b)(6) ................................................................................................................... 1, 2, 6

Holland & Knight LLP
50 California Street, Suite 2800
San Francisco, CA  94111
Tel: 415.743.6900
Fax: 415.743.6910

## I. INTRODUCTION

Plaintiffs The Two Hundred for Homeownership, a California Nonprofit Public Benefit Corporation (successor of The Two Hundred, an unincorporated association of civil rights leaders), and two of its members Robert Apodaca and Jose Antonio Ramirez, filed this action for declaratory and injunctive relief to vacate the adoption by Defendants, the California Air Resources Board and its Executive Officer, Steven Cliff, (collectively, "Defendants") of the Advanced Clean Cars II (the "ACC II") regulation that effectively outlaws sales of new passenger vehicles with internal combustion engines ("ICE") and mandates sales of only new passenger electric vehicles ("EVs") beginning in 2035. The Two Hundred is committed to increasing the supply of housing, to reducing the cost of housing to levels that are affordable to California's hard working families, and to restoring and enhancing home ownership by minorities so that minority communities can also benefit from the family stability, enhanced educational attainment over multiple generations, and improved family and individual health outcomes that white homeowners have long taken for granted. As set forth more fully in the Complaint, ownership of reliable, affordable, private transportation is critical to attaining these benefits. Defendants' adoption and implementation of the ACC II regulation violates civil rights law as well as state and federal constitutional protections. Moreover, Defendants lacked statutory authority to adopt the ACC II regulations. The Court should accordingly deny Defendants' Motion to Dismiss.

As demonstrated below, Plaintiffs have alleged sufficient facts in the Complaint to establish Article III standing, violations of Constitutional guarantees of equal protection and due process and have asserted proper claims for relief.

## II. STANDARD OF REVIEW

In evaluating Defendants' motion to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), a court must accept all factual allegations as true and draw all reasonable inferences in favor of the non-moving party. *See Isuzu Motors Ltd. V. Consumers Union of U.S., Inc.,* 12 F.Supp.2d 1035, 1042 (C.D. Cal. 1998) (*citing Barron v. Reich,* 13 F.3d 1370, 1374 (9th Cir. 1994)) ("When evaluating a Rule 12(b)(6) motion the court must accept all material allegations in the complaint as true and construe them in the light most favorable to the non-moving party.")

To withstand a motion to dismiss under Rule 12(b)(6), the plaintiff is required to plead "only enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly* 550 U.S. 544, 570 (2007).

The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully" but "is not akin to a probability standard." *Turner v. City and County of San Francisco*, 788 F.3d 1206, 1210 (9th Cir. 2015) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Johnson v. Federal Home Mortg. Corp.*, 793 F.3d 1005, 1007 (9th Cir. 2015) (quoting *Aschroft*, 556 U.S. at 678) (internal quotation marks omitted); *see also Kwan v. SanMedica Int'l*, 854 F.3d 1088, 1096 (9th Cir. 2017). "Plaintiff's complaint may be dismissed only when defendant's plausible alternative explanation is so convincing that plaintiff's explanation is *im*plausible." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) (emphasis in original). The "standard at this stage of the litigation is not that plaintiff's explanation must be true or even probable … 'it simply calls for enough fact[s] to raise a reasonable explanation that discovery will reveal evidence' to support the allegations." *Id*. at 1216-17 (citing *Twombly*, 550 U.S. at 556).

### III.  LEGAL ARGUMENT

#### a.  The Complaint Contains Allegations Sufficient to Establish Plaintiffs' Article III Standing.

To establish Article III standing, a plaintiff must establish three things:

> "First, the plaintiff must have suffered an injury in fact—an invasion of a legally-protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of—the injury must be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."

*Columbia Basin Apartment Ass'n v. City of Pasco*, 268 F.3d 791, 797 (9th Cir. 2001) (quoting *Desert Citizens Against Pollution v. Bisson,* 231 F.3d 1172, 1176 (9th Cir. 2000)).

As an initial matter, Defendants cannot seriously contend that any of the injuries alleged by Plaintiffs are not "fairly traceable to the challenged action of defendants." There can be no dispute that it is the adoption of the ACC II regulation that gives rise to Plaintiffs' alleged injuries. No other independent action of some third party has or will intervene to cause the injuries Plaintiffs allege and Defendants have identified no such intervening causal mechanism. Similarly, although Defendants make conclusory statements to the effect that the relief requested in the Complaint will not be redressed by the relief requested by Plaintiffs (*see*, *e.g.*, MTD, pp. 6:14-15; 7:3-4), those vague assertions are clearly incorrect. The relief requested by Plaintiffs – setting aside adoption of the ACC II regulations and enjoining implementation and enforcement of the regulations – will clearly remedy the injuries alleged by Plaintiffs. Instead, Defendants focus their assault on Plaintiffs' standing by focusing on the injury they allege. This attack is equally unavailing.

Plaintiffs allege that they have been injured by Defendants' adoption of the ACC II regulation in "that they have been denied due process and equal protection of the laws both in the rule-making process and effect the [ACC II] regulations will have on the availability and affordability of private transportation." Comp. ¶ 22. Defendants seem to contend that the allegation of injury due to the alleged violation of due process is insufficient because it is not coupled with a "'concrete interest' that is threatened by the failure to comply with that requirement." MTD, p. 6:10-12, citing *City of Sausalito v. O'Neill*, 386 F.3d 1186, 1197 (9th Cir. 2004). Defendants' argument ignores the detailed allegations in Paragraphs 32-49, 73, and 79 (pages 9-15) of the Complaint laying out several "concrete interests" of Plaintiffs and similarly situated members of their communities affected by adoption of the ACC II regulation. *City of Sausalito*, 386 F.3d 1186, *supra*, demands no more. Defendants' reliance on *Carrico v. City and County of San Francisco*, 656 F.3d 1002 (9th Cir. 2011) is equally unavailing. In *Carrico*, the court found the bare allegation that "'Proposition M was intended to, and does, impact their operations as landlords' … insufficient to establish standing." *Id.* at 1006. Here, the Complaint includes far more detailed allegations of concrete interests.

For an association to have standing in its own right, as alleged in the Complaint, it must satisfy all three requirements as would an individual establishing standing. *Havens Realty Corp v. Coleman,* 455 U.S. 363, 378-79, 102 S.Ct. 1114, 1124 (1982); *see also East Bay Sanctuary Covenant v. Biden,* 993 F.3d 640, 662 (9th Cir. 2021). In determining whether an association has suffered an injury in fact, the Ninth Circuit has recently explained:

> In *Havens*, the Supreme Court held that a fair housing organization had standing under the Fair Housing Act where the defendants' allegedly racial steering practices had frustrated the organization's ability to assist equal access to housing, and it had to devote 'significant resources' to identify and counteract those practices. 455 U.S. at 379, 102 S.Ct. 1114. Because the defendants' practices had 'perceptibly impaired' the organization's ability to provide its services, the Court explained, 'there can be no question that the organization has suffered injury in fact.'" *Id*.
>
> *We have read Havens to hold that an organization has direct standing to sue where it establishes that the defendant's behavior has frustrated its mission and caused it to divert resources in response to that frustration of purpose*. See Fair Hous. of Marin v. Combs, 285 F.3d 899, 905 (9th Cir. 2002). Of course, organizations cannot "manufacture the injury by incurring litigation costs or simply choosing to spend money fixing a problem that otherwise would not affect the organization at all," but they can show they "would have suffered some other injury" had they "not diverted resources to counteracting the problem." La Asociacion de Trabajadores de Lake Forest v. Lake Forest, 624 F.3d 1083, 1088 (9th Cir. 2010); see also, e.g., El Rescate Legal Servs., Inc. v. Exec. Office of Immigration Review, 959 F.2d 742, 745, 748 (9th Cir. 1991).

*East Bay Sanctuary Covenant,* 993 F.3d 640, 663 (9th Cir. 2021) (emphasis added).

The allegations in the Complaint in this action clearly meet the standard articulated by the Ninth Circuit in *East Bay Sanctuary Covenant*. Only by selectively ignoring allegations in the Complaint can Defendants argue to the contrary.

Paragraph 22 of the Complaint reads *in full* as follows:

> 22. Plaintiffs have been injured by the conduct of CARB described in this Complaint in that they have been denied due process and equal protection of the laws both in the rule-making process and the effect the Advanced Clean Cars II regulation will have on the availability and affordability of necessary private transportation. Plaintiff The Two Hundred has additionally been injured by CARB's actions in approving the racially discriminatory Advanced Clean Cars II regulation in that it has been forced to divert time and resources from its advocacy for affordable homeownership to defeating racist policies that affect the availability of affordable private transportation (necessary in many cases to maintain employment in order to pursue homeownership). Moreover, in the future, The Two Hundred will be forced to divert resources to counteract CARB's enactment and implementation of the Advanced Clean Cars II regulation *and work to ensure continued access to affordable transportation, such that homeownership is even possible, because those affordable vehicles provide the means by which community members get to and from work to support buying home, among other things.*

Holland & Knight LLP
50 California Street, Suite 2800
San Francisco, CA 94111
Tel: 415.743.6900
Fax: 415.743.6910

Comp. ¶ 22 (emphasis added). Far from "conclusory and speculative," this allegation clearly states what Plaintiffs will be forced to do – work to ensure continued access to affordable transportation such that homeownership is even possible. As set forth in the Complaint at Paragraph 12:

> The Two Hundred is committed to increasing the supply of housing, to reducing the cost of housing to levels that are affordable to California's hard working families, and to restoring and enhancing home ownership by minorities so that minority communities can also benefit from the family stability, enhanced educational attainment over multiple generations, and improved Family and individual health outcomes, that white homeowners have long taken for granted.

Comp. ¶ 12. The injury to Plaintiffs alleged in the complaint is not, as Defendants contend, "injury from exercising its right to petition the government and participate in the public process state agencies [are supposed] to follow to develop regulations" (MTD, pp. 7, FN 2) nor "merely inflicting harm on themselves" or "incurring litigation costs or spending money fixing a problem that would otherwise not affect the organization at all." MTD, pp. 7-8. Rather, the Complaint alleges that the injury to The Two Hundred is diverting resources to "*work to ensure continued access to affordable transportation, such that homeownership is even possible, because those affordable vehicles provide the means by which community members get to and from work to support buying home[s], among other things.*" Comp. ¶ 22. As the Complaint makes clear (Comp. ¶ 22), without efforts to ensure affordable transportation, the work of The Two Hundred towards affordable housing is meaningless. Without transportation, a community member cannot maintain a job. Without a job, homeownership is unobtainable, no matter how "affordable" it is made. Thus, unless The Two Hundred diverts resources to ensuring affordable transportation, its primary mission will be frustrated. That allegation is clearly more than sufficient to establish standing under *East Bay Sanctuary Covenant v. Biden, supra.*

### b. Plaintiffs Have Sufficiently Plead A Claim For Violation of the Due Process Clause Of the United States Constitution.

The ACC II Regulations violate the Due Process Clause of the United States Constitution and the California Constitution. *See* U.S. Const. Amd. 14, § 1; Cal. Const. Art. 1, § 7. "Substantive due process cases typically apply strict scrutiny in the case of a fundamental right and rational basis review in all other cases." *Witt v. Department of Air Force*, 527 F.3d 806, 817 (9th

1  Cir. 2008). Thus, "[w]hen a fundamental right is recognized, substantive due process forbids the
2  infringement of that right 'at all, no matter what process is provided, unless the infringement
3  is narrowly tailored to serve a compelling state interest.'" *Id.* (quoting *Reno v. Flores*, 507 U.S.
4  292, 301-02, 113 S.Ct. 1439 (1993)). "Few laws survive such scrutiny," and it is likely the ACC II
5  Regulations would not. *Id*.

6      Taking all facts alleged in the Complaint as true, and keeping in mind Plaintiffs need not
7  *prove* their claims in their Complaint, Plaintiffs have sufficiently plead allegations making it
8  entirely *plausible* that CARB's ACC II regulation is clearly egregious, and not "narrowly tailored to
9  serve a compelling state interest," insofar as it proposes the phase out of combustion engines that
10 minority populations are dependent on in order to make a living and insofar as it will not achieve its
11 stated purpose. *See Hernandez v. City of San Jose*, 897 F.3d 1125, 1132 (9th Cir. 2018) (noting that
12 in reviewing a motion to dismiss, a court "accept[s] as true all well-pleaded allegations of material
13 fact, and construe[s] them in the light most favorable to the non-moving party."); *see also Arizona*
14 *Students' Ass'n. v. Arizona Board of Regents*, 824 F.3d 858, 864 (9th Cir. 2016) (citing *Marder v.*
15 *Lopez*, 450 F.3d 445, 448 (9th Cir. 2006); *Zimmerman v. City of Oakland*, 255 F.3d 734, 737 (9th
16 Cir. 2001) ("We limit our review to the complaint, accept the complaint's well-pleaded factual
17 allegations as true, and construe all inferences in the plaintiff's favor for the purposes of evaluating
18 a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6)."); *Starr v. Baca*, 652 F.3d at
19 1216.

20         **i. The ACC II Regulations Jeopardize the Fundamental Right to Travel.**
21     The Fourteenth Amendment's Privileges or Immunities Clause enshrines a fundamental
22 "constitutional right to travel from one State to another." *Saenz v. Roe*, 526 U.S. 489, 498 (1999).
23 Recognition of such a right is over a century old: "Undoubtedly the right of locomotion, the right to
24 remove from one place to another according to inclination, is an attribute of personal liberty, and
25 the right, ordinarily, of free transit from or through the territory of any State is a right secured by the
26 Fourteenth Amendment and by other provisions of the Constitution." *Williams v. Fears*, 179 U.S.
27 270, 274 (1900); *see also Memorial Hospital v. Maricopa County,* 415 U.S. 250, 280, 94 S.Ct.
28 1076, 1093 (1974) ("The right to travel throughout the Nation has been recognized for over a

century in the decisions of this Court."); *Nunez by Nunez v. City of San Diego*, 114 F.3d 935, 944 (9th Cir. 1997) (applying strict scrutiny review to ordinance challenged on the ground it infringed on the fundamental right to travel). "A state law implicates the right to travel when it actually deters such travel, when impeding travel is its primary objective, or when it uses any classification which it serves to penalize exercise of that right." *Attorney General of New York v. Soto-Lopez,* 476 U.S. 898, 903, 106 S.Ct. 2317 (1986) (internal citations omitted). CARB has transparently used a classification which serves to penalize the exercise of the right to travel by phasing out combustion engines.

The ACC Regulations most certainly infringe on the fundamental right to travel. Defendants call the complete phase out of combustion vehicles a "minor burden" on the right to travel, comparing it to the burden that a toll road or a gasoline tax would create. MTD, pp. 9-10. Such a characterization drastically understates the implications of the ACC II Regulations and, quite frankly, demonstrates a fundamental misunderstanding of the regulations.  First, this completely understates the impact that the ACC II Regulations will have on cars with combustion engines—CARB has proposed a full phaseout, meaning cars with combustion engines will be essentially unavailable to California citizens.  Unlike a toll road, this leaves citizens with no choice but to incur the additional expense inherent in owning an electric vehicle.  To compare the ACC II Regulations to a toll road is to completely misunderstand the impact of the ACC II Regulations. Second, this undermines the extreme burden that this phase-out will have on low-income minority populations who are completely reliant on combustion engine vehicles to travel to and from their jobs. For these groups, the phase out is no minor burden, but will prevent them from making a living.

Defendants cite inapplicable case law in asserting that courts have only supported a limited right to travel. *Miller v. Reed* is distinguishable because it involved the requirement that a driver's license applicant submit their social security number as part of the application, whereas this regulation completely phases out combustion vehicles. 176 F.3d 1202, 1205 (9th Cir. 1999). In that case, the decision revolved around a modest requirement to obtain a driver's license, not the wholesale ability to access transportation. Moreover, *People v. Moran* involved a restriction on a

probationer's right to travel, whereas the regulations in question involve a restriction that impinges upon an entire minority and socioeconomic groups' right to travel. 1 Cal. 5th 398 (2016).

Thus, because the ACC II Regulations affect a fundamental right, "substantive due process forbids the infringement of that right 'at all, no matter what process is provided, unless the infringement is narrowly tailored to serve a compelling state interest.'" *Witt*, 527 F.3d 806, 817 (quoting *Reno*, 507 U.S. at 301-02, 113 S.Ct. 1439).   Requiring every single California citizen to bear the cost of owning and maintaining electric vehicles is certainly not "narrowly tailored" to serve the State's interest in fighting global warming or air pollution.

### ii. The ACC II Regulations Are Not "Narrowly Tailored to Serve a Compelling State Interest."

Whereas CARB purportedly has enacted the ACC II Regulations to combat global climate change, GHG inventory emissions that occur within California's borders (as measured by CARB) comprise less than 1% of global anthropogenic emissions. Comp. ¶ 44. As stated in the Complaint, "California GHG emissions can cease to exist entirely…and global climate change outcomes will remain unchanged. Even if other states adopt California's internal combustion engine ban, global climate change outcomes will remain unchanged." *Id.*  In fact, the complaint shows that: "The Advanced Clean Cars II regulation will worsen, not improve, local air quality and global greenhouse gas (GHG) emissions. Vehicle emission standards set pursuant to the Clean Air Act have a proven track record of reducing priority air pollutants without reducing car-dependent transportation to jobs, schools, hospitals, and other critical destinations." Comp. ¶ 42. While the complaint shows that the regulations will have little to no impact on global GHG emissions, the complaint shows that the regulation's disparate impact on minority groups will be great by noting: the dependence of low-income and minority groups on combustion-engine vehicles in order to hold employment (Comp. ¶¶ 33-36), the expense of EVs for low income and minority communities (Comp. ¶¶ 39-41), the lack of electricity supply and distribution constraints for electric chargers in areas with more minorities (Comp. ¶ 40), and the failure to adopt policies that will allow minority communities to still own cars after the transition (Comp. ¶ 33). This shows that there is no connection between the ACC II Regulations and CARB's ends – since the phase out of combustion

engines will have no impact on global climate change these regulations are by no means "narrowly tailored to promote a compelling governmental interest." *Nunez by Nunez*, 114 F.3d at 946 (citing *Plyer v. Doe*, 457 U.S. 202, 217, 102 S.Ct. 2382, 2395 (1982)).

Furthermore, the adoption of these regulations as a template for a national phase out is a true form of egregious abuse of power. CARB wrote the ACC regulations with national applicability in mind, but do not have the power to adopt national regulations. Eliminating the cars in all 13 states that will adopt these regulations is certainly not "narrowly tailored" to the stated purpose and thus, cannot survive strict scrutiny.

   iii. **Even if the Court Does Not Apply Strict Scrutiny, the ACC II Regulations Are "Clearly Arbitrary And Unreasonable, Having No Substantial Relation To The Public Health, Safety, Morals Or General Welfare" Because They Have Little Relationship To The Fight Against Global Climate Change.**

In the event a fundamental right is not implicated, the court may still invalidate a regulation for violating substantive due process where the law or procedure affects a fundamental right and is "clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals or general welfare." *Yagman v. Garcetti*, 852 F.3d 859, 867 (9th Cir. 2017). As explained above, the ACC II Regulations are not narrowly tailored to a compelling state interest, but even more so, they are "clearly arbitrary," bearing no "substantial relation to the public health, safety, morals or general welfare." *Yagman,* 852 F.3d at 867.

  c. **Plaintiffs Sufficiently Plead A Claim For Violation of the Equal Protection Clause of The United States Constitution**

The Equal Protection Clause of the Fourteenth Amendment broadly requires the government to treat similarly situated people equally. *Hartman v. California Dep't of Corr. And Rehabilitation*, 707 F.3d 1114, 1123 (9th Cir. 2013). To state a claim for violation of the Equal Protection Clause, a plaintiff must allege "defendants acted with an intent or purpose to discriminate against [the plaintiff] based upon membership in a protected class." *Furnace v. Sullivan*, 705 F.3d 1021, 1030 (9th Cir. 2013) (quoting *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998)). "[W]here the statute in question substantially burdens fundamental rights…or where the statute employs distinctions based on certain suspect classifications, such as race or national origin, strict scrutiny

1  applies and the statute will be upheld only if the state can show that the statute is narrowly drawn to
2  serve a compelling state interest." *Green v. City of Tucson*, 340 F.3d 891, 896 (9th Cir. 2003)
3  (citing *Grutter v. Bollinger*, 539 U.S. 306, 123 S.Ct. 2325 (2003); *Kramer v. Union Free Sch. Dist.*
4  *No. 15*, 395 U.S. 621, 627-28, 89 S.Ct. 1886 (1969)).

Here, as shown above in Section II.A., the right to travel is fundamental and the ACC II regulations burden that right. *Saenz v. Roe*, 526 U.S. 489, 498 (1999). Moreover, the complaint sufficiently alleges that it is entirely plausible the ACC II regulations disparately affects protected classes and was enacted with the intent or purpose to discriminate against such classes. More specifically, the complaint states, "race and ethnicity are suspect classes for purposes of evaluating regulations under the equal protection clause of the United States Constitution." Furthermore, "CARB's GHG Advanced Clean Cars II regulation disproportionately affects members of minority communities, including Plaintiffs Robert Apodaca and Jose Antonio Ramirez, by making affordable private transportation unavailable to them, as compared with non-minority persons unaffected by the Advanced Clean Cars II regulation, while imposing arbitrary, counter-productive State regulations and standards." (Comp. ¶¶ 73, 79.) CARB's ACC II regulation violates the equal protection clause of the United States Constitution because it makes access to new, affordable private transportation a function of race.

### i. Plaintiffs Have Sufficiently Plead That it is Plausible That CARB Acted With an Intent or Purpose to Discriminate Based Upon Membership in a Protected Class.

A plaintiff may allege that "defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." *Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir. 2001). While discovery will reveal the extent to which CARB acted with an intent or purpose to discriminate, at this stage, it is sufficient that Plaintiffs' have sufficiently plead CARB has acted with discriminatory intent. *Starr*, 652 F.3d at 1216 ("The theory of the federal rules is that once notice-giving pleadings have been served, the parties are to conduct discovery in order to learn more about the underlying facts.") Moreover, CARB's 2022 Scoping Plan Update, published December 2022, includes an overt acknowledgement that the plan will decrease the income of those earning less than $100,000 a year, which is disproportionately made up of ethnic

Holland & Knight LLP
50 California Street, Suite 2800
San Francisco, CA 94111
Tel: 415.743.6900
Fax: 415.743.6910

minorities. Request for Judicial Notice, Ex. A.  This acknowledgment, in writing, of the disparate impact these regulations may have on ethnic minorities raises – but by no means resolves – the question of CARB's "intent or purpose" at any given point in proposing the ACC II regulation. However, given this information, it is highly likely that through discovery, more evidence of CARB's intent will be uncovered.

It is plausible that CARB may have acted with invidious intent in this instance. CARB's regulations threaten to strand ethnic minorities, leaving them without effective access to transportation mobility.

### ii. Plaintiffs Have Sufficiently Plead That it is Plausible The Regulations Are Not Rationally Related to a Legitimate Government Interest.

Even if CARB's actions succeed under a strict scrutiny test, they also are not rationally related to a legitimate government interest and thus fail under a rational basis test. The regulations are so irrational as to render them unconstitutional. CARB lacks the authority to deprive millions of Californians of reliable, affordable, and available vehicle use. The median cost of an electric vehicle is $55,000, whereas the median cost of a gas-powered vehicle is 36% cheaper – $35,000. Imposing a substantial tax on the working poor of the state of California is indeed an irrational use of state power. Car ownership is a critical lifeline to participation in the state economy, and thus it plausible on its face that CARB's actions are not rationally related to a legitimate government interest.

### d. Plaintiffs' Federal Claims are Not Barred By Sovereign Immunity.

Somewhat incredibly, Defendants broadly assert the Eleventh Amendment "bars actions in federal court against state agencies, instrumentalities of a state, and officials of a state acting in their official capacity." *See* MTD, p. 19.  Not so. *Ex Parte Young* firmly establishes an exception to immunity for state officials under the Eleventh Amendment. *Ex Parte Young*, 209 U.S. 123, 149-56, 28 S.Ct. 441 (1908); *see also Arizona Students' Association v. Arizona Board of Regents*, 824 F.3d 858, 865 (9th Cir. 2016) (citing *Ex Parte Young*, 209 U.S. at 149-56; *Agua Caliente Band of Cahuilla Indians v. Hardin*, 223 F.3d 1041, 1045 (9th Cir. 2000)) (noting  sovereign immunity "does not bar claims seeking prospective injunctive relief against state officials to remedy a state's ongoing violation of federal law.").

More specifically, "[t]he *Young* doctrine allows [plaintiffs] to pursue claims against a state for prospective equitable relief, including any measures ancillary to that relief." *Id*. (citing *Green v. Mansour*, 474 U.S. 64, 68-71, 106 S.Ct. 423 (1985); *Hutto v. Finney*, 473 U.S. 678, 689-92, 98 S.Ct. 2565 (1978)); *see also Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 105, 104 S.Ct. 900 (1984); *Agua Caliente Band of Cahuilla Indians*, 223 F.3d at 1045 (noting that since *Ex Parte Young*, "courts have recognized an exception to the Eleventh Amendment bar for suits for prospective declaratory and injunctive relief against state officers, sued in their official capacities, to enjoin an alleged ongoing violation of federal law.")).

"In determining whether the doctrine of *Ex [P]arte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland*, 535 U.S. 635, 645 122 S.Ct. 1753, 1760 (2002) (citing *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 296, 117 S.Ct. 2028 (1997) (O'Connor, J., joined by Scalia and Thomas, JJ., concurring in part and concurring in judgment).

Here, Plaintiffs' have sued Steven S. Cliff, in his official capacity as Executive Officer of CARB. *See* Comp. ¶ 24.  Defendants do not assert otherwise, nor could they. Therefore, the only inquiry for this Court is whether Plaintiffs allege an "ongoing violation of federal law and seek[ ] relief properly characterized as prospective." *Verizon Maryland, Inc*., 535 U.S. at 645, 122 S.Ct. at 1760.

The Complaint seeks prospective injunctive relief, alleging defendants' adoption of, and continued enforcement of, the ACC II regulation violated, and will continue to violate, the due process and equal protection rights guaranteed by the United States Constitution. *See* Comp. ¶¶ 101, 102, 105.  This prayer for injunctive relief "clearly satisfies" the "straightforward inquiry" required under the *Ex Parte Young* doctrine. *Verizon Maryland, Inc*., 535 U.S. at 636, 122 S.Ct. at 1755.

Moreover, the "ongoing" nature of the alleged violations of the United States Constitution, most certainly a "federal law," is apparent from the plain language of the Complaint.  *See* Comp. ¶ 33 ("The Advanced Clean Cars II Rule *violates* civil rights laws, as well as the…Federal Constitution unless it is modified to include the concurrent approval of an effective, equitable, and

fully-funded program to continue to provide for private vehicle ownership in our communities.") ¶ 41 ("[I]t remains illegal for CARB to adopt regulations that cause disparate harms to racial minorities. The Advanced Clean Cars II rule does just that, and must be vacated pending the previously-promised, and now ignored, 'just transition' to reducing reliance on fossil fuels", ¶ 48 ("CARB's Advanced Clean Cars II rule, along with the four anti-housing measures The Two Hundred challenged in the 2017 Scoping Plan, and the far more extensive and foundational flaws we have commented on for the Draft 2022 Scoping Plan, is another "progressive" Wilsonian triumph: it makes the poor poorer, and singles out communities of color and working families for disparate and massive harms to plow past the Legislature's rejection of CARB's Advanced Clean Cars II diktat"), ¶ 63 ("CARB's Advanced Clean Cars II regulation will inevitably cause serious harm to the ability of Plaintiffs and other members of disadvantaged minority communities to gain access to necessary, affordable and reliable transportation and will accordingly have a disproportionate adverse impact on them.), ¶ 76 ("CARB's Advanced Clean Cars II regulation *violates* the equal protection clause of the United States Constitution because it makes access to new, affordable private transportation a function of race."). Furthermore, the fact that some of the allegations in the Complaint relate to past events (i.e., the enactment of the Advanced Clean Cars II regulation) is of no moment. Such an argument conflates *evidence of liability* with the *remedy*. See *Porter v. Jones*, 319 F.3d 483, 491 (9th Cir. 2003) ("Although Plaintiffs' allegations are rooted in events that occurred in the past, the injunctive and declaratory relief that they seek would prevent future and ongoing illegality. The Eleventh Amendment poses no bar to Plaintiffs' claims for prospective relief.") Plaintiffs have properly alleged their claim for relief to address the ongoing violations of federal law and the Eleventh Amendment does not bar the Court from considering past activities of evidence of such ongoing violations. *Id*.

To be sure, whether this activity does in fact violate federal law is not relevant to an *Ex Parte Young* analysis. *Verizon Maryland, Inc*., 535 U.S. at 636, 122 S.Ct. at 1755 (quoting *Coeur d'Alene Tribe of Idaho*, 521 U.S. at 281 ("An *allegation* of an ongoing violation of federal law ... is ordinarily sufficient" (emphasis in original)).

Defendants do not dispute the fact that Plaintiffs have asserted an ongoing violation of federal law. This is unsurprising, given Defendants hardly mention, much less thoughtfully apply, the well-established Supreme Court precedent in their sovereign immunity argument. Instead, Defendants concoct a convoluted argument that because the prayer for relief includes relief under state law, *in addition to relief under federal law*, that somehow overrides any other relief sought. Nonetheless, should the Court be inclined to accept Defendants' argument, it should allow Plaintiffs leave to amend to remove the request for relief under state law. *Arizona Students' Association*, 824 F.3d at 871 (citing *Thinket Ink Info. Res., Inc. v. Sun Microsys., Inc.*, 368 F.3d 1053, 1061 (9th Cir. 2004)) ("Dismissal of a complaint without leave to amend is only proper when…it is clear that the complaint could not be saved by any amendment.").

Thus, because the complaint seeks "prospective injunctive relief," an injunction prohibiting CARB from implementing the ACC II regulation and declaratory relief that the same violates the United States Constitution, " against [a] state official[]", defendant Steven S. Cliff, "to remedy a state's ongoing violation of federal law," the United States Constitution, the federal claims against defendant Steven S. Cliff clearly fall within the *Ex Parte Young* doctrine and are not barred by the Eleventh Amendment. *Ex Parte Young*, 209 U.S. at 149-56; *Agua Caliente Band of Cahuilla Indians*, 223 F.3d at 1045; *Verizon Maryland, Inc.*, 535 U.S. at 636.

## IV.   CONCLUSION

For all the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendants' motion to dismiss Plaintiffs' Complaint. Alternatively, if the Court finds that Plaintiffs have insufficiently plead their claims, Plaintiffs respectfully request that the Court grant leave to amend such insufficiently plead claims.

Dated: March 21, 2023                                HOLLAND & KNIGHT LLP

By: /s/ Brian C. Bunger
Brian C. Bunger

Attorney for Petitioners/Plaintiffs THE TWO HUNDRED, ROBERT APODACA and JOSE ANTONIO RAMIREZ

**PROOF OF SERVICE**

I, the undersigned, hereby declare that I am over the age of 18 years and not a party to the above-captioned action; that my business address is 560 Mission Street, Suite 1900, San Francisco, California, 94105.  On March 21, 2023, the following document(s) were served:

- **PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS**

on the interested parties in this action addressed as follows:

| | |
|---|---|
| Rob BONTA, State Bar No. 202668<br>Attorney General of California<br>GARY E. TAVETIAN, StateBarNo. 117135<br>TRACY L. WINSOR, State Bar No. 186164<br>Supervising Deputy Attorneys General<br>JANELLE M. SMITH, State Bar No. 231801<br>JOHNS. SASAKI, State Bar No. 202161<br>DAVID M. MEEKER, State Bar No. 273814<br>EMILY M. HAJARIZADEH, State Bar No. 325246<br>Deputy Attorneys General<br>1300 I Street, Suite 125<br>P.O. Box 944255<br>Sacramento, CA 94244-2550<br>Telephone: (916) 210-7795<br>Fax: (9 16) 327-2319<br>E-mail: Emily.Hajarizadeh@doj.ca. gov | Attorneys for Respondents California Air Resources Board and Steven S. Cliff. Executive Officer |

I hereby certify that on March 21, 2023, I electronically filed the foregoing document with the Clerk of the Court by using the CM/ECF system:

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

**By United States First-Class Mail:** I caused a true copy of each document(s) to be placed in a sealed envelope with first-class postage affixed and placed the envelope for collection.  Mail is collected daily at my office and placed in a United States Postal Service collection box for pickup and delivery that same day.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on March 21, 2023, at San Francisco, California.

_____
Philip Dobbs

#201196341_v1

15

PLAINTIFFS' OPPOSITION TO  MOTION TO DISMISS            CASE NO.: 1:22-CV-01474-ADA-BAM