1  Rob Bonta, State Bar No. 202668
   Attorney General of California
2  Gary E. Tavetian, State Bar No. 117135
   Tracy L. Winsor, State Bar No. 186164
3  Supervising Deputy Attorneys General
   Janelle M. Smith, State Bar No. 231801
4  John S. Sasaki, State Bar No. 202161
   David M. Meeker, State Bar No. 273814
5  Emily M. Hajarizadeh, State Bar No. 325246
   Deputy Attorneys General
6   1300 I Street, Suite 125
    P.O. Box 944255
7   Sacramento, CA 94244-2550
    Telephone: (916) 210-7795
8   Fax:       (916) 327-2319
    E-mail: Emily.Hajarizadeh@doj.ca.gov
9  *Attorneys for Respondents*
   *California Air Resources Board*
10 *and Steven S. Cliff, Executive Officer*

11                IN THE UNITED STATES DISTRICT COURT

12             FOR THE EASTERN DISTRICT OF CALIFORNIA

13

14  **THE TWO HUNDRED FOR**                1:22-cv-01474-ADA-BAM
    **HOMEOWNERSHIP, a California**
15  **Nonprofit Public Benefit Corporation,**
    **ROBERT APODACA, an individual, and**
16  **JOSE ANTONIO RAMIREZ, an individual,**  **REPLY IN SUPPORT OF**
                                            **RESPONDENTS' MOTION TO DISMISS**
17              Petitioners and Plaintiffs,   **PETITIONERS' VERIFIED**
                                            **COMPLAINT AND PETITION**
18         v.
                                            Date:       No Hearing Per Court Order
19                                          Time:       N/A
    **CALIFORNIA AIR RESOURCES BOARD,**    Dept:       Courtroom 1
20  **STEVEN S. CLIFF, in his official capacity,**  Judge:      Hon. Ana de Alba
    **and DOES 1-25,**                     Trial Date: Not Set
21                                          Action Filed: November 14, 2022
              Respondents and Defendants.
22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................. 1

ARGUMENT ........................................................................................................................ 1

    I.    Petitioners Fail to Meet Their Burden to Establish Article III Standing for the Individuals and the Organization ........................................................... 1

    II.    Petitioners Fail to Plausibly Plead a Claim for Violations of Due Process and Equal Protection of Law ........................................................................... 4

        A.    Petitioners Fail to Allege or Establish that the ACC II Regulations Jeopardize the Exercise of the Fundamental Right to Travel. ................... 4

        B.    Petitioners Do Not Allege and Fail to Establish Any Discriminatory Intent that Would Require Application of Strict Scrutiny. ........................ 7

        C.    Petitioners Fail to Allege or Establish that the ACC II Regulations Are Not Rationally Related to the Legitimate Government Interest of Controlling and Eliminating Air Pollutants from Motor Vehicles and Reducing Motor Vehicle Greenhouse Gas Emissions. ....................... 8

    III.    Sovereign Immunity Bars All of Petitioners' Claims, Except Federal Claims for Prospective Relief Against CARB's Executive Officer ..................... 10

CONCLUSION ................................................................................................................... 10

i

1

# TABLE OF AUTHORITIES

2

**Page**

3

CASES

4

*Arizona Students' Ass'n v. Arizona Bd. of Regents*
    824 F.3d 858 (9th Cir. 2016)................................................................ 10

5

6

*Ashcroft v. Iqbal*
    556 U.S. 662 (2009).......................................................................... 9

7

*Bell Atlantic Corp. v. Twombly*
    550 U.S. 544 (2007).......................................................................... 7

8

9

*Carrico v. City and County of San Francisco*
    656 F.3d 1002 (9th Cir. 2011)........................................................... 3, 4

10

*City of Cleburne, Tex. v. Cleburne Living Center*
    473 U.S. 432 (1985).......................................................................... 8

11

12

*Daimler Chrysler Corp. v. Cuno*
    547 U.S. 332 (2006).......................................................................... 2

13

*Davis v. Federal Election Comm'n*
    554 U.S. 724 (2008).......................................................................... 1

14

15

*E. Bay Sanctuary Covenant v. Biden*
    993 F.3d 640 (9th Cir. 2021)............................................................. 2

16

*Gilmore v. Gonzalez*
    435 F.3d 1125 (9th Cir. 2006)........................................................... 5

17

18

*Heft v. Moore*
    351 F.3d 278 (7th Cir. 2003)............................................................. 3

19

20

*Lujan v. Defs. of Wildlife*
    504 U.S. 555 (1992).......................................................................... 3, 4

21

*Miller v. Reed*
    176 F.3d 1202 (9th Cir. 1999)........................................................... 5

22

23

*Monarch Travel Servs., Inc. v. Associated Cultural Clubs, Inc.*
    466 F.2d 552 (9th Cir. 1972)............................................................. 5, 6

24

25

*Nevada v. Matlean*
    No. 3:08-CV-505-BES-VPC, 2009 WL 1810759 (D. Nev. June 24, 2009) .......................... 5

26

*Pennhurst State School & Hosp. v. Halderman*
    465 U.S. 89 (1984)............................................................................ 10

27

28

ii

1

## TABLE OF AUTHORITIES
### (continued)

2

**Page**

3

*People v. Moran*
   1 Cal. 5th 398 (2016) ........................................................................... 5

4

*People v. Parker*

5

   141 Cal. App. 4th 1297 (2d Dist. 2006) ............................................ 5

6

*Ranchers Cattlemen Action Legal Fund United Stockgrowers of Am. v. Vilsack*

7

   6 F.4th 983 (9th Cir. 2021) ................................................................ 3

8

*Sabra v. Maricopa Cty. Cmty. Coll. Dist.*
   44 F.4th 867 (9th Cir. 2022) .............................................................. 3

9

*San Antonio Independent School Dist. v. Rodriguez*

10

   411 U.S. 1 (1973) ............................................................................ 6, 8

11

*Sanchez v. City of Fresno*

12

   914 F. Supp.2d 1079 (E.D. Cal. 2012) ............................................ 5, 6

13

*Shapiro v. Thompson*
   394 U.S. 618 (1969) ........................................................................... 6

14

*Smith v. Costco Wholesale Corp.*

15

   No. 2:20-CV-01861-JAM-AC, 2021 WL 4317781 (E.D. Cal. Sept. 23, 2021) .................. 4, 5

16

*The Comm. Concerning Cmty. Improvement v. City of Modesto*

17

   583 F.3d 690 (9th Cir. 2009) .............................................................. 7

18

*United States v. Karl*
   264 Fed.Appx. 550 (9th Cir. 2008) .......................................... 3, 5, 8, 9

19

*Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*

20

   429 U.S. 252 (1977) ........................................................................ 7, 8

21

*Washington v. Davis*

22

   426 U.S. 229 (1976) ........................................................................... 7

23

*Yagman v. Garcetti*
   852 F.3d 859 (9th Cir. 2017) .......................................................... 5, 10

24

**CONSTITUTIONAL PROVISIONS**

25

United States Constitution

26

   Eleventh Amendment ....................................................................... 10

27

28

## TABLE OF AUTHORITIES
### (continued)

**Page**

**OTHER AUTHORITIES**

California Code of Regulations, Title 13
§ 1961.4....................................................................................................... 5, 6, 9
§ 1962.4....................................................................................................... 5, 6, 9
§ 1962.4(e) ......................................................................................................... 6
§ 1962.4(e)(2)..................................................................................................... 6

California Code of Regulations, Title 17
§ 95481............................................................................................................... 6

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**INTRODUCTION**

Petitioners[1] cannot establish standing because they fail to show any concrete injury that any of the Petitioners will suffer as a result of the Advanced Clean Cars (ACC) II regulations. And Petitioners' equal protection and due process claims fare no better. Petitioners' opposition to Respondents'[2] motion to dismiss essentially reasserts the claims in the Petition that the ACC II regulations discriminate on the basis of race because they have an economic cost, and racial minorities are disproportionately lower income. But Petitioners cannot identify a fundamental right that the ACC II regulations infringe upon, much less allege that the regulations are not rationally related to a legitimate government interest. Thus, the Court should dismiss the entire action on either standing or failure to state a claim grounds.

If the Court does not dismiss on either ground discussed above, then the Court should find that CARB's sovereign immunity bars all of the claims against CARB, and all of the claims against CARB's Executive Officer, except federal claims for prospective relief. Accordingly, the Court should dismiss CARB from the action, dismiss the state-law claims against CARB's Executive Officer (the Second, Fourth, Fifth, and Sixth Claims), and require any amended pleading to include only federal claims for prospective relief against CARB's Executive Officer.

**ARGUMENT**

**I.   PETITIONERS FAIL TO MEET THEIR BURDEN TO ESTABLISH ARTICLE III STANDING FOR THE INDIVIDUALS AND THE ORGANIZATION**

Petitioners bear the burden of establishing federal subject-matter jurisdiction. *Davis v. Federal Election Comm'n*, 554 U.S. 724, 734 (2008). As to both the individual and organizational petitioners, Petitioners fail to identify any allegations of concrete injury.

For the individuals, Petitioners claim that 20 paragraphs of the Petition identify "concrete interests" of Petitioners "and similarly situated members of their communities" purportedly affected by the ACC II regulations. Opp. 3:21–23. But only two of those paragraphs even

---

[1] Petitioners/Plaintiffs are Robert Apodaca and Jose Antonio Ramirez, individually, and The Two Hundred for Home Ownership, an organization (collectively Petitioners).
[2] Respondents are the California Air Resources Board (CARB), a California state agency, and its Executive Officer, Steven S. Cliff, in his official capacity.

1

mention the individual petitioners.  Pet. ¶¶ 73, 79.  And those paragraphs contain no facts that connect these individuals to the harms Petitioners allege in the other cited paragraphs.[3] Specifically, the Petition alleges that ACC II "impose[s] higher economic costs on the poor" (¶ 34), and will harm low-income individuals and families who need to be able to purchase "cars that are affordable in the used car market" (¶ 41).  Nowhere do the individual Petitioners allege that they are low-income individuals, or individuals who purchase cars in the used car market, such that they will feel these alleged effects.  Petitioners tacitly acknowledge this by claiming Petitioners "*and similarly situated members of their communities*" share these concrete interests. Opp. 3:22–23 (emphasis added).  But Petitioners cannot establish standing by alleging that low-income individuals and families will be injured and then arguing in their opposition brief that Petitioners are similarly situated.  *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 333 (2006) (plaintiff must allege personal injury).

        As to The Two Hundred, the test for organizational standing has not been satisfied, as Petitioners' own case demonstrates.  The Ninth Circuit held that organizations had standing in *E. Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 662–63 (9th Cir. 2021) (*EBSC*) because they alleged specific and concrete injuries.  For example, one legal services organization alleged that the challenged policy had caused it to have to shift from providing one type of specific service (legal services for asylum claims) to another (care for unaccompanied children).  *Id.* at 664. Other organizations identified specific sources of revenue that were allegedly being lost as a consequence of the challenged action.  *Id.* at 665.  By contrast, the Petition here only contains a general, conclusory allegation about a diversion of resources.  Pet. ¶ 22; Opp. 4–5.  That allegation, unlike the concrete allegations in *EBSC*, does not describe any particular service that The Two Hundred provides, any services the organization will be required to provide instead, or

---

[3]  The bulk of the paragraphs Petitioners cite include a litany of allegations that do not allege any impacts to the individual Petitioners, including allegations about: a prior lawsuit by The Two Hundred (¶ 32); an unrelated "cash for clunkers" program (¶ 33); data from several sources (¶¶ 34–38); the cost of electric vehicles and charging infrastructure (¶¶ 39–41); the allegedly speculative impact of ACC II on greenhouse gas emissions and actions the U.S. Environmental Protection Agency could have taken (¶¶ 42–44); legal conclusions (¶ 45); observations by the co-founder of a think-tank (¶¶ 46–48); and the composition of California's Legislature and its constituents (¶ 49).

1  any funding it will lose or be unable to obtain.  Petitioners simply say The Two Hundred will

2  have to "work to ensure continued access to affordable transportation," but fail to distinguish this

3  general "work" from petitioning the government or incurring litigation costs—neither of which is

4  sufficient to establish standing, as Petitioners recognize.  Opp. 5:8–12.[4]  Indeed, Petitioners

5  describe the "work" of The Two Hundred, generally, as "litigation and political action."  Pet.

6  ¶ 14; *see also id.* ¶¶ 15, 32.  Thus, Petitioners have not alleged any concrete injury to the

7  organization.

8      Even if Petitioners could allege a concrete injury, they also fail to explain how this Court

9  could redress any such injury.  Instead, Petitioners conclude that the relief they request will "clearly

10  remedy the injuries" they allege.  Opp. 3:10–12.  But Petitioners fail to provide any support or

11  explanation for this statement.  *See United States v. Karl*, 264 Fed.Appx. 550, 553 (9th Cir. 2008)

12  ("Failure to cite to valid legal authority waives a claim."); *see also Heft v. Moore*, 351 F.3d 278,

13  285 (7th Cir. 2003) ("The failure to cite cases in support of an argument waives the issue . . . .").[5]

14      Petitioners also mischaracterize *Carrico v. City and County of San Francisco*, 656 F.3d

15  1002 (9th Cir. 2011).  While in *Carrico* the court did find insufficient the bare allegation that the

16  proposition at issue there "was intended to, and does, impact their operations as landlords," the

17  plaintiffs also alleged that they were "subject to the legal and constitutional infirmities of the

18  municipal ordinance" and "argue[d] in their post-argument submissions that that allegation alone

19

20      [4]  Petitioners also ignore other case law that underscores why their claims of organizational injury are insufficient to establish standing.  *See Sabra v. Maricopa Cty. Cmty.*

21  *Coll. Dist.*, 44 F.4th 867, 880 (9th Cir. 2022) (organization "went out of its way to develop a public-awareness campaign . . . unrelated to litigation costs"); *Ranchers Cattlemen Action Legal*

22  *Fund United Stockgrowers of Am. v. Vilsack*, 6 F.4th 983, 988 (9th Cir. 2021) (organization devoted resources, "independent of expenses for this litigation, to deal with the program" at

23  issue).

24      [5]  Similarly, Petitioners assert that "[n]o other independent action of some third party has or will intervene to cause the injuries [Petitioners] allege and [Respondents] have identified no such

25  intervening causal mechanism."  Opp. 3:5–7.  But manufacturers are making ZEVs independently of the ACC II regulations, responding to rapidly evolving market pressures, consumer demands,

26  and regulatory requirements.  And manufacturers determine the prices they charge for their vehicles, ZEVs and otherwise.  As for Petitioners' allegations regarding used car prices, an untold

27  number of third parties set used car prices.  Further, market forces, such as chip shortages, also impact prices of new and used cars.  Accordingly, Petitioners' unsupported assertion is contrary

28  to reality and the law.  *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561–62 (1992).

3

is sufficient to confer standing." *Id.* at 1006–07 (internal quotations omitted).  The *Carrico* court found these allegations did not establish standing, because "there [was] no allegation on which to base an inference that any of [plaintiffs'] members intend to engage in conduct even arguably proscribed by Proposition M." *Id.*  Here, Petitioners' conclusory allegations are similarly insufficient.  Further, unlike the plaintiffs in *Carrico*, Petitioners do not and cannot allege that the ACC II regulations impose any compliance obligations on them.  *Lujan*, 504 U.S. at 561–62 (where petitioner is not direct object of government action or inaction challenged, standing is ordinarily more difficult to establish).

Petitioners fail to allege any concrete injury to either the individuals or organization. Accordingly, the Petition should be dismissed.

**II.    PETITIONERS FAIL TO PLAUSIBLY PLEAD A CLAIM FOR VIOLATIONS OF DUE PROCESS AND EQUAL PROTECTION OF LAW**

Petitioners fail to state a claim that the ACC II regulations violate the equal protection and due process clauses of the U.S. and California constitutions.  Petitioners' allegations are insufficient to support a plausible claim that the ACC II regulations: impinge or jeopardize the right to travel to deny Petitioners due process or equal protection of law; result in a discriminatory classification; or are not rationally related to a legitimate government interest.  Significantly, Petitioners base many of their arguments on the incorrect and unsupported contention that the ACC II regulations entirely phase out combustion engines.  Thus, the Court should dismiss the First, Second, Third, and Fourth claims for violation of the federal and state due process and equal protection clauses.[6]

**A.    Petitioners Fail to Allege or Establish that the ACC II Regulations Jeopardize the Exercise of the Fundamental Right to Travel.**

Petitioners simply repeat the allegations in the Petition that the ACC II regulations restrict the right to travel by affecting the ability of low-income individuals to purchase a vehicle.  Opp.

_____

[6]  Petitioners did not respond to CARB's request that the Court dismiss the Fifth and Sixth Claims for state-law violations.  Accordingly, Petitioners waived any such arguments.  *Smith v. Costco Wholesale Corp.*, No. 2:20-CV-01861-JAM-AC, 2021 WL 4317781, at *1 (E.D. Cal. Sept. 23, 2021) (failure to address argument constitutes waiver).

4

1   7:9–22; Pet. ¶¶ 73, 79.  However, the right to travel is not absolute.  *Gilmore v. Gonzalez*, 435

2   F.3d 1125, 1136–37 (9th Cir. 2006); *Monarch Travel Servs., Inc. v. Associated Cultural Clubs,*

3   *Inc.*, 466 F.2d 552, 554 (9th Cir. 1972).  Petitioners contend the ACC II regulations impose

4   significant burdens on a single mode of transportation, but such burdens, to the extent they exist,

5   do not implicate the right to interstate travel.  *See Monarch*, 466 F.2d at 554; *see also Nevada v.*

6   *Matlean*, No. 3:08-CV-505-BES-VPC, 2009 WL 1810759, at *2 (D. Nev. June 24, 2009).  As

7   Petitioners acknowledge, a state law only violates the constitutional right to travel when it

8   actually deters that travel, when impeding travel is its primary objective, or when it uses any

9   classification that serves to penalize the exercise of that right.  *Sanchez v. City of Fresno*, 914 F.

10  Supp. 2d 1079, 1110 (E.D. Cal. 2012); *People v. Parker*, 141 Cal. App. 4th 1297, 1307 (2d Dist.

11  2006)[7]; *see also Yagman v. Garcetti*, 852 F.3d 859, 866–67 (9th Cir. 2017) ("Government action

12  that affects only economic interests does not implicate fundamental rights.") (internal quotations

13  omitted).  Petitioners do not and cannot allege that the ACC II regulations do any of these three

14  things.  In fact, Petitioners do not allege or contend that the ACC II regulations actually deter

15  travel or that impeding travel is the primary objective of the regulations.

16      Instead, Petitioners conclude that the purported "phase out" of internal combustion engines

17  is a classification that serves to penalize the exercise of the right to travel because it imposes an

18  "extreme burden" on "low-income minority populations who are completely reliant on

19  combustion engine vehicles to travel."  Opp. 7:6–22.[8]  But Petitioners are wrong about the

20  requirements of the ACC II regulations.  The regulations do not ban sales or use of all

21  conventional vehicles, new or otherwise.  Cal. Code Regs. tit. 13, §§ 1961.4, 1962.4; Motion

22  11:21–22.  Further, even after 2035, the regulations still allow for sales and use of plug-in hybrid

23

---

24      [7]  Petitioners failed to address in their Opposition any of the cases cited directly above,
    thus waiving any disagreement with the implication of their holdings as applied to this case.  *See*
25  *Smith*, 2021 WL 4317781, at *1 (failure to address argument constitutes waiver).  Petitioners
    attempt to distinguish *Miller v. Reed*, 176 F.3d 1202 (9th Cir. 1999) and *People v. Moran* 1 Cal.
26  5th 398 (2016) from this case, but even if *Miller* and *Moran* are not factually similar, they are
    instructive because they demonstrate that the right to travel is not absolute.
27      [8]  Petitioners' arguments on this point are entirely unsupported.  Opp. 7:9–22; *see Karl*,
    264 Fed.Appx. at 553.
28

5

1    electric vehicles (Cal. Code Regs. tit. 13, § 1962.4(e)),[9] and existing vehicles may continue to be

2    used, as The Two Hundred recognizes (Pet. ¶ 44).  There is no requirement to buy ZEVs

3    exclusively, or purely electric vehicles, as Petitioners claim.  And even if Petitioners were correct,

4    their claim does not equate to an allegation that the regulations deter travel or impede travel as a

5    primary objective.  *Sanchez*, 914 F. Supp. 2d at 1110.  The federal and state constitutions protect

6    the right to be free from an unreasonable restriction on travel, not the financial ability to purchase

7    a private motor vehicle.  *See Monarch*, 466 F.2d at 554.

8         In their arguments regarding the Equal Protection Clause, Petitioners similarly conclude

9    that ACC II "makes access to new, affordable private transportation a function of race."

10   Opp. 10:15–17.  But that conclusion is unsupported by any factual allegations in the Petition.

11   Instead, Petitioners allege that "[c]limate programs" have higher economic costs on low-income

12   households and that a higher percentage of individuals in low-income households are also

13   members of racial minorities.  Pet. ¶ 34.  However, such allegations do no not plausibly establish

14   that any classification based on race serving to penalize a right to travel exists in the ACC II

15   regulations.  *See*, *e.g.*, *San Antonio Independent School Dist. v. Rodriguez*, 411 U.S. 1, 24–29

16   (1973) (economic status alone is not a suspect classification).  Nor can Petitioners plausibly make

17   any such allegation because on their face the ACC II regulations do not use any such

18   classification.  *See* Cal. Code Regs. tit. 13, §§ 1961.4, 1962.4; *Shapiro v. Thompson*, 394 U.S.

19   618, 627–35 (1969) overruled on another ground in *Edelman*, 415 U.S. at 651 (application of

20   strict scrutiny to laws that abridge the right to travel is limited to those that are facially

21   discriminatory).  In fact, the ACC II regulations seek to reduce air pollution from vehicles and

22   incentivize further and faster access to and use of ZEVs in disadvantaged communities.  Cal.

23   Code Regs. tit. 13, § 1962.4(e)(2).

24        Accordingly, Petitioners fail to state a claim that the ACC II regulations use any

25   classification that penalizes the exercise of or otherwise improperly impact the right to travel.

26

27        [9] A plug-in hybrid electric vehicle, or PHEV, is similar to a hybrid, but has a larger
     battery that allows the vehicle to be plugged in and recharged, at the driver's discretion, in
28   addition to refueling with gasoline, or other fuel.  *See* Cal. Code Regs. tit. 17, § 95481.

6

**B.      Petitioners Do Not Allege and Fail to Establish Any Discriminatory Intent that Would Require Application of Strict Scrutiny.**

The Petition is devoid of any allegation that CARB adopted the ACC II regulations with an intent or purpose to discriminate against anyone, let alone Petitioners, that would subject the ACC II regulations to strict scrutiny.  Petitioners attempt to address this deficiency by arguing that ACC II violates the Equal Protection Clause "because it makes access to new, affordable transportation a function of race."  Opp. 10:15–17.  But, as explained directly above, that argument is unavailing because Petitioners' contention that the ACC II regulations impact the ability of low-income minority individuals to purchase low cost motor vehicles simply repeats its allegations that the regulations discriminate on the basis of race because they have an economic cost, and racial minorities are disproportionately lower income.  That is not enough to withstand a motion to dismiss because a facially neutral state action does not violate the right of equal protection simply because it may result in a racially disproportionate impact.  *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 264–65 (1977); *Washington v. Davis*, 426 U.S. 229, 239 (1976) (rejecting that a law "is unconstitutional solely because it has a racially disproportionate impact").

In addition, Petitioners cannot evade their failure to allege discriminatory intent or purpose by speculating that such intent or purpose will be unearthed through discovery.  *See The Comm. Concerning Cmty. Improvement v. City of Modesto*, 583 F.3d 690, 703 (9th Cir. 2009) ("If there is no evidence of intentional discrimination, then the court assumes that the challenged actions were not based on discrimination and must inquire only whether the actions were rationally related to a legitimate governmental interest." [reviewing motion to dismiss]); *see also Arlington Heights*, 429 U.S. at 270–71.  To survive a motion to dismiss, the complaint must allege "enough facts to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Here, Petitioners conclude that "it is sufficient that [Petitioners] have sufficiently plead CARB has acted with discriminatory intent."  Opp. 10:22–24.  However, Petitioners do not cite to any, and there are no, allegations in the Petition that CARB acted with discriminatory intent.  *See* Opp. 10:20–11:8.  Similarly, Petitioners' unsupported assertion that

7

1   CARB's intent regarding the ACC II regulations is somehow evidenced by the contents of

2   CARB's Scoping Plan also fails.  Opp. 10:26-11:1.  First, the Scoping Plan is not challenged in

3   this case.  And even if it was, although the Scoping Plan acknowledges that certain impacts will

4   vary based on race and ethnicity, that does not indicate any racial animus or otherwise violate

5   equal protection rights.[10]  *See Arlington Heights*, 429 U.S. at 265.  Thus, Petitioners fail to meet

6   their burden to plausibly plead that when CARB adopted the ACC II regulations it acted with any

7   discriminatory intent or purpose to target any racial minority in a manner that would trigger

8   review under heightened scrutiny.

9   **C.   Petitioners Fail to Allege or Establish that the ACC II Regulations Are Not**
        **Rationally Related to the Legitimate Government Interest of Controlling**
10       **and Eliminating Air Pollutants from Motor Vehicles and Reducing Motor**
        **Vehicle Greenhouse Gas Emissions.**
11

12      Economic impacts, such as those alleged by Petitioners, are subject to rational basis review.

13   *Rodriguez*, 411 U.S. at 55.  "The general rule is that legislation is presumed to be valid and will

14   be sustained if the classification drawn by the statute is rationally related to a legitimate state

15   interest."  *City of Cleburne, Tex. v. Cleburne Living Center*, 473 U.S. 432, 439–40 (1985).

16   Petitioners' arguments on this point are entirely unsupported.  Opp. 11:9–18; *see Karl*, 264

17   Fed.Appx. at 553.  And Petitioners cannot plausibly allege that the purported classification is not

18   rationally related to a legitimate state interest.

19      Petitioners acknowledge that the State has a legitimate interest in reducing emissions from

20   criteria pollutants and greenhouse gas emissions caused by motor vehicles, improving the

21   environment, and protecting public health.  Pet. ¶¶ 13, 64, 69.  The ACC II regulations are

22   rationally related to this interest because they seek to control and eliminate motor vehicle

23   emissions by increasing the stringency of emission standards for internal combustion engine

24   _____

25      [10]   In fact, the Scoping Plan also recognizes the importance of ensuring disparate impacts
     are prevented or addressed and "the need to ensure that accessibility to clean technology and
26   energy do not further exacerbate health and opportunity gaps for low-income households and
     communities of color."  *See* Scoping Plan 1, 8, 125–26.  CARB objects to Petitioners' request for
27   judicial notice because the Scoping Plan is not at issue in this case, and Petitioners fail to
     establish its relevance.
28

1    vehicles and increasing the requirements for ZEVs beginning with the 2026 model year, which

2    Petitioners also acknowledge.  Cal. Code Regs. tit. 13, §§ 1961.4, 1962.4; Motion 3:19–25;

3    CARB's RJN, Ex. A at 17–21; *see* Pet. ¶¶ 4, 27.  Instead, Petitioners ignore the criteria- and

4    toxic-pollutant reductions expected from the ACC II regulations and attempt to divert the focus to

5    global greenhouse gas emissions and climate change.  Opp. 8:11–21.  This argument is

6    unavailing.  The fact that California's light-duty vehicle greenhouse gas emissions may make up a

7    small percentage of total global greenhouse gas emissions is immaterial to whether the State has a

8    legitimate interest in controlling emissions within its borders, or whether the ACC II regulations

9    are rationally related to that interest (particularly in light of CARB's statutory obligations to

10   control emissions).  *See* Motion 1:22–3:18.  Moreover, Petitioners' unsupported assertion that

11   gas-powered vehicles are less expensive than electric vehicles (Opp. 11:11–18[11]) is insufficient to

12   overcome the deficiencies in the Petition and the strong presumption of validity under rational

13   basis review.  *Ashcroft v. Iqbal*, 556 U.S. 662, 677–79 (2009).[12]  Because Petitioners fail to allege

14   sufficient facts to establish that the ACC II regulations are not rationally related to a legitimate

15   government interest, Petitioners' equal protection claims should be dismissed.

16           Finally, Petitioners claim without support that the ACC II regulations are also "clearly

17   arbitrary."  Opp. 9:12–18; *see also* Opp. 11:11–18.  But Petitioners undermine themselves by

18   recognizing that the State has a legitimate interest in reducing emissions from criteria pollutants,

19   as well as greenhouse gas emissions caused by motor vehicles, which the ACC II regulations seek

20   to do.  Pet. ¶¶ 13, 64, 69; *see* Motion 1:22–4:2.  Thus, Petitioners fail to meet the "exceedingly

21   high burden" to overcome the strong presumption of validity of the regulations because

22   Petitioners do not make a clear showing that the regulations are so arbitrary or irrational that

23   CARB's adoption resulted in "egregious" conduct as to "amount to an abuse of power lacking

24

25

26   [11]  Petitioners also assert that the ACC II regulations impose a "substantial tax" on low-income individuals (Opp. 11:15–17), but provide no support for that assertion.  *See Karl*, 264 Fed.Appx. at 553.

27   [12]  For similar reasons, even assuming *arguendo* that strict scrutiny was the appropriate standard, Petitioners have not sufficiently alleged that the ACC II regulations are not narrowly

28   tailored to a compelling state interest.

9

1   any reasonable justification in the service of a legitimate governmental objective." (*Yagman*, 852

2   F.3d at 867 (quoting *Shanks v. Dressel*, 540 F.3d 1082, 1088 (9th Cir. 2008)).

3        Accordingly, the Court should dismiss the Petition in its entirety because Petitioners fail to

4   state a claim.

5   **III.   SOVEREIGN IMMUNITY BARS ALL OF PETITIONERS' CLAIMS, EXCEPT FEDERAL
         CLAIMS FOR PROSPECTIVE RELIEF AGAINST CARB'S EXECUTIVE OFFICER**

6

7        Petitioners appear to misunderstand CARB's position regarding sovereign immunity.

8   CARB does not seek to dismiss the First or Third Claims against CARB's Executive Officer on

9   sovereign immunity grounds, to the extent those claims seek prospective injunctive relief.

10  However, CARB does seek to dismiss all of the claims against it, as well as the state-law claims

11  against its Executive Officer.  *See* Notice 2:13–15.  Petitioners do not dispute that the Eleventh

12  Amendment bars the state-law claims against CARB or its Executive Officer.[13]

13       Thus, the Court should dismiss CARB entirely, as well as the Second, Fourth, Fifth, and

14  Sixth Claims against its Executive Officer.

15                           **CONCLUSION**

16       For the foregoing reasons, the Court should grant CARB's motion to dismiss.

17  Dated:  March 30, 2023                    Respectfully submitted,

18                                            ROB BONTA
                                              Attorney General of California
19

20                                            _/s/ Emily M. Hajarizadeh_
                                              EMILY M. HAJARIZADEH
21                                            Deputy Attorney General
                                              *Attorneys for Respondents*
22                                            *California Air Resources Board*
                                              *and Steven S. Cliff, Executive Officer*
23

24

25
    _____

26       [13]  Petitioners appear to suggest that the Eleventh Amendment does not bar its federal
    claims against CARB.  Opp. 12:1–2.  But the case Petitioners rely on does not stand for the
27  proposition that a state entity is subject to suit in federal court.  *Arizona Students' Ass'n v.*
    *Arizona Bd. of Regents*, 824 F.3d 858, 865 (9th Cir. 2016) (plaintiffs erred by naming state entity,
    rather than members of entity in their official capacities).  Sovereign immunity bars all claims
28  against CARB.  *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 98–102 (1984).

                                          10